2016 IL App (3d) 140780

Opinion filed February 24, 2016

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2016

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| Plaintiff-Appellant, | ) ) | Appeal No. 3-14-0780 |
| v. | ) ) | Circuit No. 13-CF-2727 |
| SEAF M. ZAYED, | ) ) | The Honorable Amy Bertani-Tomczak, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE McDADE delivered the judgment of the court, with opinion.
Presiding Justice O'Brien and Justice Holdridge concurred in the judgment and opinion.

_____

**OPINION**

¶ 1       The defendant, Seaf M. Zayed, was charged with unlawful possession of a controlled

substance (720 ILCS 570/402(c) (West 2012)).  He filed a motion to suppress evidence, which

the circuit court granted.  On appeal, the State argues that the circuit court erred when it granted

the defendant's motion to suppress.  We affirm.

¶ 2                                    FACTS

¶ 3       On January 9, 2014, the defendant was charged by indictment with unlawful possession

of a controlled substance.  On May 5, 2014, the defendant filed a motion to suppress evidence.

In his motion, the defendant stated that he was a passenger in the back seat of a vehicle that was stopped by a police officer on December 22, 2013. The defendant alleged that he was searched by the police officer, but that the officer lacked probable cause and reasonable suspicion to conduct the search. The circuit court held a hearing on the defendant's motion on July 24, 2014.

¶ 4                                    Testimony of Deputy Lukich

¶ 5        Deputy Bryan Lukich testified that he was on patrol in his vehicle at around 5 p.m. on December 22, 2013, in a residential area in Will County when he observed a silver Dodge fail to signal a turn. He initiated a traffic stop of the vehicle, which had three occupants, one of whom was the defendant. During the stop, Lukich had the defendant exit the vehicle. During a pat-down frisk of the defendant, Lukich reached in the area of the defendant's genitals. The defendant's pants were then unzipped and his belt undone. Lukich found two plastics bags in the area of the defendant's genitals, one of which contained what he believed to be crack cocaine.

¶ 6        On cross-examination, Lukich stated that the silver Dodge signaled its turn but did so late, which prompted the stop. After he activated his emergency lights, Lukich said that he noticed the back seat passenger—the defendant—move around the back seat and that the defendant's "head came close to the roof line of the vehicle." Lukich explained that the movement was such that it appeared as if the defendant was trying to stand up. It was dark outside and Lukich's vehicle was approximately 30 feet behind the silver Dodge.

¶ 7        Lukich testified that he had been trained in drug interdiction, which included identifying odors of burnt cannabis and frequent hiding spots for drugs. Lukich also stated that when he initially approached the silver Dodge, he smelled a very strong odor of burnt cannabis, an odor that he had smelled hundreds of times in the past. Lukich detained the driver of the vehicle and

2

asked him when cannabis had last been smoked in the vehicle. The driver responded, "earlier in the day."

¶ 8        Lukich next had the defendant exit the vehicle, as he "was concerned for [his] safety because of [the defendant's] movements inside the car during the traffic stop." Lukich stated that he "didn't know if [the defendant] was hiding a weapon or there could be more narcotics inside the vehicle." Lukich stated that he conducted a pat-down search of the defendant for weapons and narcotics. During the pat-down search, Lukich felt something that was not consistent with human anatomy in the defendant's genital region. The object felt like narcotics, as it "kind of crunch[ed]" in his hands. Lukich had felt that type of object hundreds of times.

¶ 9        Lukich said he placed the defendant near the front of the police vehicle for illumination purposes and asked him to unzip his pants. After the defendant complied, Lukich saw and retrieved the plastic bag. Lukich also stated that he had observed individuals use their genital region as a hiding place for narcotics well over a hundred times.

¶ 10       On redirect examination, Lukich stated that the defendant was approximately 5'11'' and 240 pounds. He admitted that the head of a person that size would typically be close to the roof of a vehicle like the silver Dodge. He also stated that the pat-down search of the defendant was done for officer safety, but acknowledged that he did not feel anything during the pat-down that indicated the presence of a weapon.

¶ 11                                  Video/Audio Recording

¶ 12       A video and audio recording of the stop was entered into evidence and played at the hearing. The recording began with Lukich driving through a residential neighborhood in an aggressive manner, which included failing to stop at two stop signs. As Lukich continued through the neighborhood, he approached a silver vehicle turning right at a stop sign. The

3

vehicle signaled and completed its turn. Lukich activated his emergency and initiated the traffic stop. When the vehicle pulled over and stopped, the head of an individual wearing a wool hat could be seen through the back window. There were no apparent movements made by this individual.

¶ 13 Lukich approached the driver's side of the vehicle and asked for the driver's license and insurance. The driver responded, but his response was inaudible on the recording. Lukich then asked if the driver and the passengers had identification. Lukich learned that the driver did not have a license on him. Lukich then asked the driver to step out of the vehicle, and he cuffed the driver's hands behind his back. He then performed a pat-down search of the driver, which included reaching into various pockets on the driver's clothing. He then moved the driver to the rear of the stopped vehicle and asked the driver something about smoking. The driver's response was inaudible on the recording.

¶ 14 Lukich next walked to the rear passenger side of the vehicle, opened the door, and had the defendant exit the vehicle. He told the defendant to place his hands on the vehicle and asked the defendant something about what he had on him. While using a flashlight, Lukich then conducted a pat-down search of the defendant, which included grabbing at the defendant's pants in the genital region. Lukich said that he could smell "weed" and asked if the defendant had any on him. Next, Lukich had the defendant place his hands on his head and turn around. After donning rubber gloves, Lukich continued his search of the defendant, which included further grabbing of the defendant's pants in the genital region and expressing his disbelief in the defendant's assertion that he did not have anything on his body. He then turned the defendant around, handcuffed his hands behind his back, and moved him in between the silver vehicle and the police vehicle.

¶ 15    Lukich continued his search of the defendant's genital region, which included pulling on the waistband of the defendant's underwear, eventually pulling out a plastic bag while saying something about the defendant having cocaine in there. During this time, the defendant fidgeted and bent over slightly, which moved his genital region slightly away from Lukich. Lukich asked what the defendant was doing, and the defendant responded by making a comment about Lukich whipping the defendant's "dick" out. Lukich responded by saying something about the defendant "stuffing shit down [his] pants." The defendant again complained about Lukich whipping the defendant's "dick" out, and Lukich said that there were no cars around. However, Lukich looked toward the road and immediately stated they would wait for the cars to pass. Nine vehicles passed before Lukich continued his search in the defendant's underwear. Lukich pulled out another plastic bag from the defendant's genital region, made an attempt to zip up the defendant's pants, and led the defendant to the back seat of the police vehicle. Lukich then returned to the driver and asked something about whether there was anything else in the car and how long ago they had smoked. The driver's response was largely inaudible on the recording.

¶ 16    The rest of the recording of the stop was not relevant to this case.

¶ 17    On August 4, 2014, the circuit court granted the defendant's motion to suppress, finding that "[i]t's the Court's decision based upon the evidence that I've seen on the video and the oral testimony and the arguments and the case law presented that the officer possibly had a right to conduct a Terry search. I think he went way beyond that. There was no probable cause." A written order granting the motion was entered on September 9, 2014, and the State appealed.

¶ 18                                ANALYSIS

¶ 19    On appeal, the State argues that the circuit court erred when it granted the defendant's motion to suppress. In support of its argument, the State contends that: (1) Lukich feared for his

5

safety, so a pat-down search was justified; (2) the defendant's furtive movements in the back seat of the vehicle indicated that he was hiding something illegal; (3) the pat-down search provided probable cause for a further search of the defendant; and (4) the odor of cannabis emanating from the vehicle provided probable cause to search the defendant.

¶ 20    In reviewing a circuit court's decision on a motion to suppress evidence, we employ a two-part standard of review. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). We grant great deference to the court's findings of fact and will disturb those findings only if they are against the manifest weight of the evidence. *Id.* However, we are free to assess those facts in light of the issues presented and the relief sought; accordingly, we review the court's ultimate legal ruling on the suppression motion *de novo*. *Id.*

¶ 21    Because a traffic stop is more analogous to an investigative stop as defined in *Terry v. Ohio*, 392 U.S. 1 (1968), courts generally apply the *Terry* principles when faced with a challenge to the reasonableness of a traffic stop. *People v. Jones*, 215 Ill. 2d 261, 270 (2005). In this case, there is no question that Lukich had probable cause to stop the silver Dodge in which the defendant was a passenger. Without more, though, an officer in that situation lacks the authority to conduct a search of the vehicle or its occupants. *Id.* at 271. "The initial stop may be broadened into an investigative detention, however, if the officer discovers specific, articulable facts which give rise to a reasonable suspicion that the defendant has committed, or is about to commit, a crime." *People v. Ruffin*, 315 Ill. App. 3d 744, 748 (2000).

¶ 22    In *People v. Stout*, 106 Ill. 2d 77, 87 (1985), our supreme court held that when an officer detects an odor of a controlled substance, the officer has probable cause to conduct a search of a vehicle if testimony has been elicited that the officer has training and experience in the detection of controlled substances. This principle has been extended to include searches of the driver

6

(*People v. Strong*, 215 Ill. App. 3d 484, 489-90 (1991)) and passengers (*People v. Boyd*, 298 Ill. App. 3d 1118, 1127 (1998); *People v. Williams*, 2013 IL App (4th) 110857, ¶ 34).

¶ 23      In this case, Lukich testified that when he approached the silver Dodge, he immediately smelled a very strong odor of burnt cannabis emanating from the vehicle. He also testified that he was trained in recognizing the smell of cannabis and had smelled the odor of burnt cannabis hundreds of times. Pursuant to *Stout* and its progeny, Lukich had probable cause under these facts to conduct a search of the defendant. *Boyd*, 298 Ill. App. 3d at 1127; *Williams*, 2013 IL App (4th) 110857, ¶ 34. Accordingly, we hold that Lukich had probable cause to conduct the search of the defendant. Our analysis does not end there, however, as the search itself must still be reasonable under the fourth amendment (U.S. Const., amend. IV).

¶ 24      Strip searches are not *per se* unreasonable or illegal, but they do constitute an extremely significant intrusion into the individuals' privacy. *People v. Johnson*, 334 Ill. App. 3d 666, 673 (2002). The United States Supreme Court has stated:

> "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979);

See also *People v. Carter*, 2011 IL App (3d) 090238, ¶ 19.

7

¶ 25    An examination of the four factors announced in *Bell* leads us to the conclusion that Lukich's strip search of the defendant was unreasonable. While we acknowledge that the third factor favors the State, as Lukich obtained probable cause to conduct a search of the vehicle and its occupants based on the odor of cannabis emanating from the vehicle, the other three *Bell* factors strongly favor the defendant. To the extent Lukich even attempted to take steps to reduce the intrusiveness of the search, those attempts on the whole were inadequate. He did wear rubber gloves, but the search was conducted on a residential street on which numerous vehicles passed during the stop and the search. While it was dark outside, there were streetlights providing some illumination of the area. Lukich also positioned the defendant in front of his police vehicle's headlights for better visibility, which was also a position closer to the street and to the view of the passing vehicles. Lukich exposed a significant portion of the defendant's underwear and the defendant showed visible discomfort during the search, which was confirmed by the defendant's twice-expressed concern that Lukich was going to expose his genitals during the search. Lukich appeared either oblivious or unconcerned with these circumstances, which was evidenced by his statement that no vehicles were around just before nine vehicles passed by. The search of the defendant involved extremely intrusive means and it should have been performed in a manner that respected the defendant's privacy. *Cf. id.* ¶¶ 12-16 (discussing section 103-1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/103-1 (West 2008)), which requires, *inter alia*, a strip search of a person arrested for a traffic, regulatory, or misdemeanor offense to be conducted in an area where it cannot be observed by persons not conducting the search, and finding that a strip search conducted on a public street during daylight violated the statute). For these reasons, we hold that Lukich failed to conduct the search in a minimally intrusive nature such that the search was unreasonable under the circumstances. Compare *Carter*, 2011 IL App (3d) 090238, ¶ 20.

¶ 26      For the foregoing reasons, we hold that the circuit court did not err when it granted the defendant's motion to suppress evidence.

¶ 27                                    CONCLUSION

¶ 28      The judgment of the circuit court of Will County is affirmed.

¶ 29      Affirmed.