# Illinois Official Reports

## Appellate Court

*In re O.S.*, 2018 IL App (1st) 171765

| | |
|---|---|
| Appellate Court Caption | *In re* O.S., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. O.S., Respondent-Appellant). |
| District & No. | First District, Second Division<br>Docket No. 1-17-1765 |
| Filed<br>Rehearing denied | June 26, 2018<br>July 27, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 17-JD-155, 17-JD-662; the Hon. Stuart F. Lubin, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Rebecca Cohen, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Mary P. Needham, and Clare Wesolik Connolly, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE PUCINSKI delivered the judgment of the court, with opinion.<br>Presiding Justice Mason and Justice Hyman concurred in the judgment and opinion. |

**OPINION**

¶ 1        Following a bench trial conducted in accordance with the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2016)), minor respondent O.S.[1] was adjudicated delinquent of the offenses of aggravated unlawful use of a weapon and unlawful possession of a weapon and committed to the Department of Juvenile Justice for an indeterminate period of time. On appeal, respondent contests his delinquency adjudication, arguing (1) the circuit court erred in denying his pretrial motion to suppress and (2) the State failed to prove him delinquent of the offenses beyond a reasonable doubt. For the reasons explained herein, we affirm the judgment of the circuit court.

¶ 2                                    BACKGROUND
¶ 3        On January 18, 2017, during the course of an encounter with Chicago police officers, minor respondent was found to be in possession of a firearm. The State subsequently filed a petition for adjudication of wardship against respondent in connection with those events. In the filing, the State alleged that respondent was

"delinquent by reason of the following facts:

On or about January 18, 2017, in violation of SECTION 24-1.6(a)(1) of ACT 5 of CHAPTER 720 of the Illinois Compiled Statutes, as amended, [O.S.] committed the offense of AGGRAVATED UNLAWFUL USE OF A WEAPON, in that the above-named minor knowingly carried on or about his or her person, a firearm, at a time when he was not on his own land, or in his own abode, or a fixed place of business, and the person possessing the firearm has not been issued a currently valid Firearm Owner's Identification Card (Section (3)(c)), this being a Class 2 felony as the Minor-Respondent has previously been adjudicated delinquent for Aggravated Unlawful Use of a Weapon.

On or about January 18, 2017, in violation of SECTION 24-1.6(a)(1) of ACT 5 of CHAPTER 720 of the Illinois Compiled Statutes, as amended, [O.S.] committed the offense of AGGRAVATED UNLAWFUL USE OF A WEAPON, in that the above-named minor knowingly carried on or about his or her person a firearm, at a time when he was not on his own land, or in his own abode, or a fixed place of business, and the person possessing the weapon was under 21 years of age and in possession of a handgun as defined in Section 24-3, unless the person under 21 is engaged in lawful activities under the Wildlife Code, this being a Class 2 felony as the Minor-Respondent has previously been adjudicated delinquent for Aggravated Unlawful Use of a Weapon.

On or about January 18, 2017, in violation of SECTION 24-3.1(a)(1) of ACT 5 of CHAPTER 720 of the Illinois Compiled Statutes, as amended, [O.S.] committed the offense of UNLAWFUL POSSESSION OF FIREARMS, in that the above-named minor, being a person under 18 years of age, knowingly had in his possession a firearm of a size which may be concealed upon the person."

---

[1]To better preserve the privacy of minor respondent, this court has elected not to identify his first name and instead will simply use his initials or refer to him as "respondent." This court has also changed the caption of this case to reflect this decision.

¶ 4 Respondent, in turn, filed a motion to quash his arrest and suppress evidence, arguing that he was unlawfully detained and searched absent a warrant, probable cause, or reasonable suspicion that he was armed or engaged in criminal activity, in contravention of his constitutional rights. The circuit court subsequently presided over a hearing on respondent's motion.

¶ 5 At the hearing, respondent testified that at approximately 9 p.m. on January 18, 2017, he was in the company of his cousin Max and his friend Kevin. The three young men were seated in Kevin's vehicle, which was idling in front of an apartment building located near the intersection of Lotus and Wellington Avenues. Respondent was seated in the front passenger seat, and Max was in the backseat. Respondent explained that they were waiting for a friend who lived at that apartment building to join them. The car was stopped parallel to the curb, approximately five feet from the intersection. Because of the cold temperature, the windows of the car were rolled up, and Kevin kept the car running as they waited. In addition, Kevin activated his vehicle's hazard lights. Respondent denied that anyone was smoking marijuana in the vehicle that evening. He specifically denied that anyone was smoking marijuana as the car was idling in front of the apartment building.

¶ 6 Respondent estimated that Kevin's car had been idling in front of the apartment building for approximately three minutes when a grey "detective car" pulled up alongside of them. The law enforcement vehicle then maneuvered "diagonally in front of" Kevin's car and activated its emergency lights. Three police officers then exited the vehicle and approached and surrounded Kevin's car. Respondent explained that one of the officers stood in front of Kevin's car, the second approached the driver's side door, and the third approached the front passenger-side door. Kevin provided his license and registration in response to an officer's request. The officer standing on the passenger side of the vehicle then used his illuminated flashlight to tap the window and request that respondent lower the window. Respondent complied with the officer's request. After this brief interaction, the officers subsequently opened the doors of Kevin's vehicle and ordered the young men out of the car. As soon as respondent exited the vehicle, one of the officers conducted a pat down of his person. During the course of the pat down, the officer recovered a handgun from the right pocket of respondent's jacket. Respondent confirmed that he had been concealing the gun in his jacket pocket.

¶ 7 Respondent testified that he did not feel free to leave at any time during the encounter with the police officers. He explained that the officers essentially "jumped out of nowhere" and surrounded and "trapped" them.

¶ 8 On cross-examination, respondent admitted that he was unable to recall the name of the friend who he, Max, and Kevin were waiting for that evening. He was also unable to recall whether his cousin Max had a "blunt" tucked behind his ear. Respondent, however, denied that there were remnants of burnt cannabis in the backseat of Kevin's vehicle. Respondent was also unable to recall whether Kevin's vehicle had been stopped in a no parking zone. Upon being shown a photograph of the intersection of Lotus and Wellington, respondent acknowledged that there was a no parking sign located where Kevin's vehicle had been stopped on the evening of January 18, 2017. Respondent, however, did not recall observing the sign that evening. He did recall observing a stop sign at the intersection of Lotus and Wellington and estimated that Kevin's vehicle was stopped approximately "five feet away" from that

intersection. Finally, respondent was unable to recall whether his cousin was also arrested that evening after the police officers recovered marijuana and cocaine from his person.

¶ 9 Following respondent's testimony, his attorney rested. Chicago police officer Jason Cloherty was called upon to testify on behalf of the State. Officer Cloherty testified that on the evening of January 18, 2017, he was a member of a three-person tactical team. Officer Rodriguez and Officer Ramos were the other members of the team. At approximately 9 p.m., the three officers were patrolling the 5400 block of West Wellington Avenue in an unmarked vehicle. He explained that they were patrolling that area because there had been reports of shots fired in that general vicinity during the previous three or four nights. Officer Cloherty testified that he was seated in the backseat of the vehicle and had his window "cracked." As the officers were traveling westbound on Wellington, Officer Cloherty "smelled the odor of cannabis." Officer Cloherty explained that cannabis has a distinctive smell and that he was familiar with that smell as a result of his frequent exposure to the drug during his years as a police officer. Upon smelling the distinctive odor, he looked to his immediate right and observed a Lexus sport utility vehicle (SUV) stopped in a no parking zone. Officer Cloherty knew the vehicle was in a no parking zone because there was a street sign that designated the area as such.

¶ 10 After observing the Lexus parked in a no parking zone and smelling the odor of cannabis, Officer Cloherty alerted Officer Rodriguez, who was driving the unmarked car, and directed him to "put a stop [t]here." Officer Rodriguez stopped the vehicle, and the officers then approached the Lexus. Officer Cloherty testified that he approached the front passenger side of the vehicle, while Officer Rodriguez approached the driver's side of the vehicle. Officer Rodriguez then began speaking to the driver through the lowered driver's side window, and it became apparent that the odor of cannabis was emanating from inside the Lexus. Officer Cloherty then requested respondent to lower the front passenger side window, and respondent complied. After respondent rolled down the window, Officer Cloherty used his flashlight to illuminate the interior of the Lexus. He observed another young man situated in the backseat of the vehicle. That young man "had a hand-rolled cigar with cannabis [tucked behind] his ear." After smelling marijuana and observing the blunt tucked behind the rear passenger's ear, Officer Cloherty and his partners ordered all of the passengers out of the vehicle. Officer Cloherty testified that he opened the front passenger side door so that respondent could exit the vehicle. When he opened respondent's door, he observed respondent reach his hand into his right jacket pocket and stand up. Officer Cloherty immediately instructed respondent "not to do that" and then put his own hand "on that pocket" and "felt a gun." He explained that he handles a handgun every day and has made "a lot" of gun-related arrests. As such, he was eminently familiar with the shape and feel of handguns. Officer Cloherty recovered the handgun from respondent's person. He identified the gun as a semiautomatic, black .22-caliber Beretta loaded with six live rounds and one in the chamber. Officer Cloherty then handcuffed respondent. He testified that other contraband was subsequently recovered from the Lexus, including a "partially smoked hand-rolled cigar with cannabis inside it."

¶ 11 On cross-examination, Officer Cloherty acknowledged that at the time the officers encountered the Lexus on October 18, 2017, they did not have any type of warrant for the vehicle or any of the occupants of that vehicle. He also acknowledged that Officer Rodriguez parked their unmarked police vehicle in a manner that "blocked" the Lexus. He confirmed that the Lexus's windows were all raised when police initially approached the car. Officer Cloherty

- 4 -

further acknowledged that he did not observe any smoke in the vehicle or any marijuana or marijuana paraphernalia on respondent's person at any time during the encounter. He denied that he drew his weapon at any time during the encounter.

¶ 12 Upon the conclusion of Officer Cloherty's testimony, the State rested, and the parties then argued their respective cases. The circuit court, after hearing the aforementioned testimony and the arguments of the parties, denied respondent's motion to quash his arrest and suppress evidence. The court explained its rationale in open court as follows:

"[Respondent] testified that on January 18th, he was on his way to pick up a friend. He was a passenger in the car in the front seat. They parked in front of the building at approximately 5400 West Wellington. The car was running. The windows were up. [Respondent] denied that there was any cannabis smoking or that any cannabis had been smoked in the car, and frankly, the facts of the case lead me to believe that that's not a credible statement because the passenger had a blunt behind his ear and another burned blunt was recovered from the vehicle. [Respondent] testified that a car pulled up on the side of them and then parked diagonally in front of their car. He didn't deny that there was a blunt behind Max's ear. He just couldn't recall if there was one. That was [respondent's] testimony. He did deny that there was a blunt with burned cannabis in the rear seat, but that was recovered by the police. He testified that [the officers] asked Kevin for his license and registration. Apparently, that window was down, which made the smell of cannabis even stronger to these trained officers. The officer then opened the door on the passenger side. The [respondent] got out, was patted down, and arrested for the concealed weapon that was recovered in his jacket—jacket pocket. There is a no parking sign, which justified the initial stop. The police asked the driver to roll down his window first, and that's when the smell was even stronger. The [respondent] denies he put his hand on his right jacket pocket, and I don't believe him because he wasn't credible about the cannabis smoking in the vehicle.

Officer Cloherty, whose testimony I believe, testified that he always keeps his windows cracked when he's driving, winter and summer. They pulled parallel to this parked Lexus. He smelled cannabis coming from the car parked in a no parking zone. He went to the front passenger side. Officer Rodriguez went to the driver side and asked the driver to roll down the window, and then Officer Cloherty directed the passenger, [respondent] to roll down the window on the passenger side, and he again smelled an even stronger smell of marijuana. He testified that the person sitting behind the [respondent] had a hand-rolled cigar in his ear. [Officer Cloherty] could see the green, the green substance inside of it. He testified that as the [respondent] got out of the car, which the police have the right to do according to the cases given to me, the [respondent] reached for his right jacket pocket while Officer Cloherty said, don't do that. [Officer Cloherty] touched the pocket, immediately realized it was a gun, and arrested the [respondent]. In the rear seat, a partially smoked hand-rolled blunt was recovered.

So the motion to quash arrest and suppress evidence is respectfully denied."

¶ 13 Following the court's ruling, the cause proceeded to an immediate bench trial. At trial, the parties stipulated to the testimony that Officer Cloherty provided during the earlier suppression hearing. Defense counsel, however, elected not to stipulate to respondent's testimony. The State then called upon Officer Cloherty to provide additional details about his interaction with

respondent on the evening of January 18, 2017. Officer Cloherty testified that after he recovered the loaded .22-caliber, black Beretta handgun from respondent's jacket pocket, he placed respondent under arrest. Respondent was then transported to the police station for processing. At that time, Officer Cloherty learned that respondent was 16 years old and identified respondent's date of birth.[2] Officer Cloherty testified that respondent did not show him a valid Firearm Owner's Identification (FOID) card. He further testified that respondent had not been issued a valid FOID card. Moreover, at the time that he found the gun on respondent's person, respondent was not hunting or complying with any conditions under the Illinois Wildlife Code. Officer Cloherty testified that he inventoried the handgun in accordance with proper police protocol.

¶ 14       On cross-examination, Officer Cloherty acknowledged that he had not observed the handgun prior to conducting the pat down of respondent's person. Upon the conclusion of Officer Cloherty's testimony, the State rested. Respondent elected not to testify, and his attorney rested without calling any witnesses. The parties then delivered closing arguments. The circuit court ultimately adjudicated respondent delinquent of the offenses of aggravated unlawful use of a weapon and unlawful possession of a firearm that were contained in the State's adjudication petition. In doing so, the court found that the "State's proven beyond a reasonable doubt that the [respondent] [wa]s in possession of a loaded handgun without a Firearm Owners Identification Card. He was not on his own home, land, or fixed place of business, and he is under 18, and [the gun was of a] size that was concealed. There's a finding of guilty on Count 2, aggravated unlawful use of a weapon, Counts 1 and 3 merge into Count 2."

¶ 15       At the sentencing hearing that followed, the court heard evidence presented in aggravation and mitigation. After considering the evidence, including the respondent's prior arrests and delinquency adjudications, the court remanded respondent to the custody of the Department of Juvenile Justice. This appeal followed.

¶ 16                                        ANALYSIS
¶ 17                                   Motion to Suppress
¶ 18       On appeal, respondent first challenges the circuit court's denial of his pretrial motion to quash his arrest and suppress evidence. He submits that his constitutional right to be free from unreasonable searches and seizures was violated when police officers "seized the stopped vehicle in which he was a passenger even though the driver was merely standing temporarily in a no parking zone and the smell of burnt cannabis near the vehicle did not indicate *** criminal activity."

¶ 19       The State responds that the circuit court properly denied respondent's motion to suppress because the police officers had a reasonable articulable suspicion to initiate a *Terry* stop. Specifically, the State argues that "there was a reasonable, articulable suspicion of criminal activity to support the brief detention of minor-respondent where the police officer smelled cannabis emanating from the illegally parked vehicle *** which minor-respondent occupied."

_____

[2]Officer Cloherty identified respondent's specific date of birth at the bench trial; however, in order to better preserve the privacy of respondent, this court will not include that information in this disposition.

- 6 -

¶ 20　　　As a general rule, a circuit court's ruling on a motion to suppress is subject to a bifurcated two-prong standard of review. See *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *People v. Johnson*, 237 Ill. 2d 81, 88 (2010). Pursuant to this standard, a reviewing court will afford great deference to the circuit court's factual findings and will disregard those findings only where they are against the manifest weight of the evidence. *Johnson*, 237 Ill. 2d at 88; *People v. Lopez*, 2013 IL App (1st) 111819, ¶ 17. The circuit court's ultimate legal finding as to whether suppression is warranted, however, is subject to *de novo* review. *People v. Colyar*, 2013 IL 111835, ¶ 24; *People v. Bartelt*, 241 Ill. 2d 217, 234 (2011). Accordingly, "[a] court of review 'remains free to engage in its own assessment of the facts in relation to the issues presented and may draw its own conclusions when deciding what relief should be granted.' " *People v. Gherna*, 203 Ill. 2d 165, 175-76 (2003) (quoting *People v. Crane*, 195 Ill. 2d 42, 51 (2001)). When conducting this analysis, a reviewing court may consider the evidence presented at trial in addition to the evidence presented during the prior suppression hearing. *People v. Almond*, 2015 IL 113817, ¶ 55.

¶ 21　　　The right to be free from unlawful searches and seizures is protected by both the federal and state constitutions. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6; *Bartelt*, 241 Ill. 2d at 225-26. "The 'essential purpose' of the fourth amendment is to impose a standard of reasonableness upon the exercise of discretion by law enforcement officers to safeguard the privacy and security of individuals against arbitrary invasions." *People v. McDonough*, 239 Ill. 2d 260, 266-67 (2010) (quoting *Delaware v. Prouse*, 440 U.S. 648, 653-54 (1979)). This constitutional guarantee "applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *People v. Thomas*, 198 Ill. 2d 103, 108 (2001). Not every interaction between police officers and private citizens, however, results in a seizure within the meaning of the fourth amendment. *Almond*, 2015 IL 113817, ¶ 56; *McDonough*, 239 Ill. 2d at 268. Courts evaluating the nature and propriety of police-citizen encounters have grouped those interactions into three tiers: (1) an arrest or detention of an individual supported by probable cause; (2) brief investigative stops, commonly referred to as "*Terry* stops," supported by a reasonable, articulable suspicion of criminal activity; and (3) consensual encounters involving neither coercion nor detention that do not implicate the fourth amendment. *People v. Luedemann*, 222 Ill. 2d 530, 544 (2006); *People v. Smith*, 2016 IL App (3d) 140648, ¶ 28.

¶ 22　　　For purposes of the fourth amendment analysis, a person is considered seized when a law enforcement officer, " ' "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." ' " *Luedemann*, 222 Ill. 2d at 550 (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991), quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). More specifically, the relevant inquiry to determine whether an individual seated in a parked or stopped vehicle has been seized is whether a reasonable person in the defendant's position would have believed that he was free to decline the officer's requests or otherwise terminate the encounter. *Luedemann*, 222 Ill. 2d at 550-51; *Smith*, 2016 IL App (3d) 140648, ¶ 29; *People v. Bozarth*, 2015 IL App (5th) 130147, ¶ 15. Our supreme court has emphasized that this "test presupposes a reasonable *innocent* person." (Emphasis in original.) *Luedemann*, 222 Ill. 2d at 551 (citing *Bostick*, 501 U.S. at 438).

¶ 23　　　Relevant factors to consider when determining whether an individual was seized include (1) the threatening presence of multiple officers, (2) the display of a weapon by an officer, (3) some physical touching of the individual's person, and (4) the use or language or tone of

voice indicating that compliance might be compelled. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980); *Luedemann*, 222 Ill. 2d at 553. "In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." *People v. Fields*, 2014 IL App (1st) 130209, ¶ 22. In addition to the four aforementioned *Mendenhall* factors, other factors that courts have "found indicative of a seizure of a parked vehicle are 'boxing the car in, approaching it on all sides by many officers, pointing a gun at the suspect and ordering him to place his hands on the steering wheel, or use of flashing lights as a show of authority.' " *Luedemann*, 222 Ill. 2d at 557 (quoting 4 Wayne R. LaFave, Search and Seizure § 9.4(a), at 434-35 (4th ed. 2004)).

¶ 24    As a threshold matter, the parties agree that respondent was seized when police officers arrived on scene and positioned their unmarked squad car diagonally in front of Kevin's vehicle and then surrounded the vehicle. Upon review, we agree with the parties. The relevant testimony at the suppression hearing established that once Officer Cloherty directed his fellow officers to "put a stop" to Kevin's car, the unmarked police vehicle positioned itself diagonally in front of the idling SUV. The manner in which the police vehicle was positioned effectively blocked the idling car from driving away from the scene. It is well established that a police encounter with persons in a parked car may be classified as a seizure where a police officer positions his car in a manner that "blocks" the other vehicle. See, *e.g.*, *Luedemann*, 222 Ill. 2d at 559. In addition, we find the positioning of the officers around the idling vehicle further supports the conclusion that respondent and the other occupants were subject to an immediate seizure. Officer Cloherty also testified that once the police car was positioned diagonally in front of the idling SUV, he approached the front passenger side of the vehicle and Officer Rodriguez approached the driver's side door. The positioning of the officers had the effect of further restraining the movement of the SUV's occupants. See, *e.g.*, *Gherna*, 203 Ill. 2d at 179-80 (finding that occupants of a parked vehicle were seized when two bike officers positioned themselves on either side of a parked car, thereby restraining the movement of the car's occupants and preventing them from either exiting the vehicle or driving away from the scene, and began putting questions to the occupants).

¶ 25    This does not end our inquiry, however, as we must next determine whether the seizure was reasonable. *Id.* at 181 ("[O]nly those seizures which are 'unreasonable' violate the fourth amendment."). At the suppression hearing, Officer Cloherty testified that the seizure was initiated after he observed the vehicle stopped in a no parking zone and smelled cannabis coming from the direction of the idling vehicle. Upon making those two aforementioned observations—the location of the stopped vehicle and the smell emanating from that vehicle—Officer Cloherty instructed his partners to "put a stop" to the vehicle. Respondent, however, suggests that neither the location of the parked vehicle nor the smell of cannabis provided the officers with the requisite reasonable suspicion to validate the seizure. Respondent first disputes that the vehicle in which he was a passenger was "parked" in a no parking zone. In support, he notes that the Chicago Municipal Code defines the term "parking" as "the standing of an *unoccupied* vehicle otherwise than temporarily for the purpose of and while actually engaged in the loading or unloading [of] property or passengers." (Emphasis added.) Chicago Municipal Code 9-4-010 (amended Nov. 16, 2016). Given that Kevin's vehicle was occupied while it was stopped, respondent argues that the vehicle was not actually "parked" in violation of the no parking sign; rather, it was simply "standing" in an area designed as a no parking area. The State, in turn, argues that the Illinois Vehicle Code prohibits

the "[s]tand[ing] or park[ing] [of] a vehicle, whether occupied or not, except momentarily to pick up or discharge passengers" within 30 feet upon the approach of a stop sign or "[a]t any place where official signs prohibit standing." 625 ILCS 5/11-1303(a)(2)(d), (f) (West 2016). The State notes that respondent testified that Kevin's vehicle was positioned approximately five feet from the intersection of Lotus and Wellington and that the intersection contained a stop sign. The State thus argues that officers had reasonable suspicion that the vehicle was positioned in violation of the Illinois Vehicle Code even though Officer Cloherty's testimony did not identify the vehicle's positioning in relation to the stop sign as a basis for the seizure. We need not resolve this issue, however, because we conclude that the odor of cannabis afforded the officers with the reasonable suspicion required to justify the seizure.

¶ 26    It is well established that distinctive odors can be "persuasive evidence" of criminal activity. *People v. Stout*, 106 Ill. 2d 77, 87 (1985). More specifically, Illinois courts have repeatedly recognized that the distinctive smell of burning cannabis emanating from a vehicle will provide police officers familiar with and trained in the detection of controlled substances with probable cause to search a vehicle and all persons seated therein. See, *e.g.*, *id.*; *People v. Zayed*, 2016 IL App (3d) 140780, ¶ 22; *People v. Williams*, 2013 IL App (4th) 110857, ¶ 34; *People v. Hansen*, 326 Ill. App. 3d 610, 615 (2001); *People v. Boyd*, 298 Ill. App. 3d 1118, 1122 (1998). Such searches are justified pursuant to the "automobile exception" to the warrant requirement, which is derived from the recognition that there is a diminished expectation of privacy with respect to automobiles. *Stout*, 106 Ill. 2d at 86.

¶ 27    Respondent acknowledges this legal precedent; however, he submits that the odor of marijuana can no longer furnish police officers with probable cause or reasonable suspicion of criminal activity in light of the recent amendment decriminalizing the possession of small amounts of marijuana in Illinois. See Pub. Act 99-697, § 40, (eff. July 29, 2016) (amending section 4 of the Illinois Cannabis Control Act (720 ILCS 550/4) and decriminalizing the possession of "not more than 10 grams of any substance containing cannabis" and categorizing such possession as a "civil law violation punishable by a minimum fine of $100 and a maximum fine of $200). He relies on *Commonwealth v. Cruz*, 945 N.E.2d 899, 908-10 (Mass. 2011), a case in which the Massachusetts Supreme Judicial Court found that the mere odor of marijuana no longer provided law enforcement officers with reasonable suspicion of criminal activity following a recent referendum decriminalizing the possession of small amounts of marijuana. *Id.* In doing so, the court found that by voting in favor of the referendum, "the voters intended to treat offenders who possess one ounce or less of marijuana differently from perpetrators of drug crimes." *Id.* at 909-10. Accordingly, given the fact that the referendum "changed the status of possessing one ounce or less of marijuana from a crime to a civil violation," the court concluded that "odor of burnt marijuana alone cannot reasonably provide suspicion of criminal activity"; rather, there must be "some other additional fact to bolster a reasonable suspicion of actual criminal activity." (Emphasis omitted.) *Id.* at 910.

¶ 28    Some courts have found the rationale employed by the Massachusetts court persuasive. See, *e.g.*, *People v. Brukner*, 25 N.Y.S.3d 559, 572 (2015) (concluding that "the mere odor of mari[j]uana emanating from a pedestrian, *without more*, does not create reasonable suspicion that a crime has occurred, and consequently does not authorize law enforcement to forcibly stop, frisk, or search the individual" (emphasis in original) following the New York legislature's decriminalization of possession of less than 25 grams of marijuana). A number of other jurisdictions that have considered the issue, however, have reached different results. In

doing so, courts have emphasized decriminalization is not synonymous with legalization and that the odor of marijuana remains indicative of criminal activity despite the passage of statutes decriminalizing the possession of smaller amounts of cannabis. See, *e.g.*, *Robinson v. State*, 152 A.3d 661, 681 (Md. 2017) (concluding that a recent amendment to Maryland's marijuana statute decriminalizing, but not legalizing, the possession of less than 10 grams of marijuana did not "alter existing case law concerning the search, seizure, and forfeiture of marijuana, which remains illegal" and that a "warrantless search of a vehicle is permissible upon the detection of the odor of marijuana emanating from the vehicle"); *People v. Cannergeiter*, 65 V.I. 114, 132, 136 (2016) (emphasizing that "decriminalization" is not synonymous with "legalization" and concluding that "the Legislature's enactment of Act No. 7700 decriminalizing the possession of one ounce or less or marijuana in the Virgin Islands does not preclude law enforcement officers from stopping a vehicle based on the detection of an odor of marijuana emanating from that vehicle"); *People v. Zuniga*, 2016 CO 52, ¶¶ 23, 28 (concluding that "the odor of marijuana remains relevant to probable cause determinations and can support an inference that a crime is ongoing even though possession of one ounce or less of marijuana is allowed [pursuant to a new] Colorado law" because "a substantial number of other marijuana-related activities remain unlawful," and thus "the odor of marijuana is still suggestive of criminal activity"); see also *State v. Senna*, 2013 VT 67, ¶ 16, 194 Vt. 283, 79 A.3d 45 (concluding that the passage of Vermont's medical marijuana law "does not undermine the significance of the smell of marijuana as an indicator of criminal activity"); *State v. Sisco*, 373 P.3d 549, 553 (Ariz. 2016) (rejecting the argument the odor of marijuana no longer provided law enforcement officers with probable cause to believe that criminal activity is taking place following the passage of Arizona's medical marijuana statute, which "makes marijuana legal in only limited circumstances," because "the odor of marijuana in most circumstances will warrant a reasonable person believing there is a fair probability that contraband or evidence of a crime is present); *People v. Strasburg*, 56 Cal. Rptr. 3d 306, 311 (Ct. App. 2007) (finding that California's medical marijuana act "provides a limited immunity—not a shield from reasonable investigation" and concluding that the odor of marijuana in a parked car provided a police officer with probable cause to search the vehicle and the occupants therein).

¶ 29　　Upon consideration, we are unpersuaded by respondent's argument regarding the effect of the recent amendment to the Cannabis Control Act on fourth amendment search and seizure jurisprudence. Illinois law still prohibits the knowing possession of cannabis. 720 ILCS 550/4 (West 2016) ("It is unlawful for any person knowingly to possess cannabis."). The recent amendment to the Cannabis Control Act simply treats the possession of "not more than 10 grams of any substance containing cannabis" as a "civil law violation" punishable by a fine. *Id.* § 4(a). Possession of more than 10 grams of cannabis remains a crime subject to criminal penalties. See *id.* § 4(b)-(g). Because decriminalization is not synonymous with legalization, even though possession of less than 10 grams of cannabis is no longer a crime in Illinois, it remains illegal. Moreover, we note that it remains a crime to drive while impaired due to the ingestion of cannabis. 625 ILCS 5/11-501 (West 2016). We therefore conclude that case law holding that the odor of marijuana is indicative of criminal activity remains viable notwithstanding the recent decriminalization of the possession of not more than 10 grams of marijuana.

¶ 30    Applying the aforementioned viable legal precedent, we further find that the search and seizure of respondent did not run afoul of the fourth amendment. The record establishes that at the time of the seizure, Officer Cloherty had smelled the distinctive odor of marijuana coming from the direction of a car that was idling in a no parking zone. Given that Illinois prohibits the knowing possession of marijuana and prohibits operating a vehicle while impaired and under the influence of marijuana, the distinctive odor of marijuana was indicative of criminal activity and provided the officers with reasonable suspicion to believe that criminal activity was afoot. When the officers approached the idling vehicle and spoke to the occupants through lowered windows, the odor of marijuana became more apparent. In addition, Officer Cloherty was able to see a marijuana cigarette tucked behind the ear of the rear seat passenger. Such observations provided the officers with probable cause to search the vehicle and the vehicle's occupants. *Stout*, 106 Ill. 2d at 87-88; *Zayed*, 2016 IL App (3d) 140780, ¶¶ 22-23; *Williams*, 2013 IL App (4th) 110857, ¶ 34; *Hansen*, 326 Ill. App. 3d at 615; *Boyd*, 298 Ill. App. 3d at 1127. Respondent's weapon was recovered during the course of this lawful search. Accordingly, we find that the circuit court properly denied respondent's motion to suppress.

¶ 31                                    Sufficiency of the Evidence

¶ 32    Respondent next challenges the sufficiency of the evidence. He argues that the State failed to present sufficient evidence concerning his age and his lack of a FOID card, which were necessary elements to prove him delinquent of aggravated unlawful use of a weapon and unlawful possession of a firearm.

¶ 33    The State disputes respondent's challenge to the sufficiency of the evidence and contends that Officer Cloherty's testimony conclusively established respondent's juvenile status as well as the fact that he had not been issued a FOID card at the time he was found in possession of a firearm.

¶ 34    Due process requires proof beyond a reasonable doubt to convict any person of a criminal offense. *People v. Ross*, 229 Ill. 2d 255, 272 (2008). This standard is applicable to juvenile delinquency proceedings. *In re Q.P.*, 2015 IL 118569, ¶ 24; *In re Jonathon C.B.*, 2011 IL 107750, ¶ 47. In reviewing a challenge to the sufficiency of the evidence, it is not a reviewing court's role to retry the respondent; rather, "in delinquency proceedings, as in criminal cases, a reviewing court must decide ' "whether, [after] viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " *In re Q.P.*, 2015 IL 118569, ¶ 24 (quoting *People v. Austin M.*, 2012 IL 111194, ¶ 107, quoting *In re Jonathon C.B.*, 2011 IL 107750, ¶ 47). Because the trier of fact is in the best position to evaluate the credibility of the witnesses, draw reasonable inferences from the evidence, and resolve any inconsistencies in the evidence (*Austin M.*, 2012 IL 111194, ¶ 107; *In re Jonathon C.B.*, 2011 IL 107750, ¶ 59), a reviewing court may not substitute its judgment for that of the trier of fact and will not reverse a respondent's delinquency adjudication unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt as to his guilt (*In re Q.P.*, 2015 IL 118569, ¶ 24).

¶ 35    A person commits the offense of aggravated unlawful use of a weapon when "he or she knowingly *** [c]arries or possesses on or about his or her person or in any vehicle or concealed on his or her person except when on his or her land or in his or her abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other

- 11 -

firearm" and one or more of the statute's aggravating factors are present. 720 ILCS 5/24-1.6(a) (West 2016). In this case, the State's adjudication petition alleged that respondent was delinquent of two counts of aggravated unlawful use of a weapon. In the first count, the aggravating factor was the fact that respondent "has not been issued a currently valid [FOID] card" (*id.* § 24-1.6(a)(1), (a)(3)(C)), whereas the second count was predicated on the fact that respondent was "under 21 years of age" (*id.* § 24-1.6(a)(1), (a)(3)(I)). The adjudication petition also alleged that respondent was delinquent of the offense of unlawful possession of a firearm in that he was under 18 years of age at the time he possessed the firearm, which was of a size that could be concealed on his person. *Id.* § 24-3.1(a)(1) ("A person commits the offense of unlawful possession of firearms or firearm ammunition when: (1) He is under 18 years of age and has in his possession of any firearm of a size which may be concealed upon the person."). Accordingly, respondent's status as a juvenile was a relevant factor with respect to the offenses of AUUW and unlawful possession of a firearm.

¶ 36    It is well settled that a person's age may be established as an element of an offense beyond a reasonable doubt when "a police officer testifies before the court about an offender's response to inquiries from law enforcement officers regarding his age." (Emphasis omitted.) *In re S.M.*, 2015 IL App (3d) 140687, ¶ 16; see also *In re Gabriel W.*, 2017 IL App (1st) 172120, ¶ 51 (recognizing that "the appellate court has found that a police officer's testimony at a bench trial may suffice to establish a juvenile respondent's age"). In this case, Officer Cloherty testified that when respondent was brought to the police station for processing, he learned respondent's birth date[3] and that he was 16 years old. Such testimony is sufficient to establish respondent's status as a juvenile beyond a reasonable doubt. *In re Gabriel W.*, 2017 IL App (1st) 172120, ¶ 52 (finding that the State proved the respondent possessed a firearm while he was a juvenile based in part on the testimony of police officer who "testif[ied] to the age obtained while processing the arrest"). In addition to Officer Cloherty's testimony, we note that defense counsel "stipulate[d] to Juvenile jurisdiction" at respondent's earlier arraignment. See, *e.g.*, *id.* ¶ 48 (rejecting the respondent's argument that the State failed to prove his juvenile status, based in part, on the fact that defense counsel stipulated to juvenile jurisdiction at respondent's arraignment, reasoning that "by stipulating to juvenile jurisdiction, respondent was stipulating to the fact that he was under 18 years old on the day of the alleged offense"). Accordingly, we find that the State presented sufficient evidence of respondent's juvenile status.

¶ 37    Respondent, however, also argues that the State failed to present sufficient evidence that he had not been issued a valid FOID card. Like the element of an offender's age, a police officer's testimony may be sufficient to establish the lack of a FOID card. See, *e.g.*, *People v. Grant*, 2014 IL App (1st) 100174-B, ¶¶ 25-26 (rejecting the defendant's argument that the State failed to establish he had not been issued a FOID card where the arresting officer testified that the defendant did not present the officer with a valid FOID card and that the defendant responded "no" when asked if he had been issued a card, concluding that the "trial court could reasonably interpret [the officer's] testimony as evidence that the defendant had not been issued and did not possess a valid FOID card"). Here, at respondent's adjudication hearing, Officer Cloherty testified that respondent never showed him a valid FOID card and that respondent did not have

_____

[3]As mentioned previously, although Officer Cloherty identified respondent's date of birth at the bench trial, this court will not include that information in this disposition.

and had not been issued a valid FOID card. Respondent acknowledges Officer Cloherty's testimony, but argues that the testimony was insufficient because Officer Cloherty did not specifically explain how he knew that respondent had not been issued a valid FOID card. Although it is true that Officer Cloherty did not explain the basis for his knowledge regarding respondent's lack of a FOID card at respondent's adjudication hearing, we reiterate that a reviewing court considering a challenge to the sufficiency of the evidence is required to view the evidence in the light most favorable to the prosecution (*In re Q.P.*, 2015 IL 118569, ¶ 24) and that a police officer's testimony is sufficient to establish that an offender has not been issued a FOID card. Viewing Officer Cloherty's testimony in the light most favorable to the State, we find that there was sufficient evidence that respondent had not been issued a FOID card. See, *e.g.*, *Grant*, 2014 IL App (1st) 100174-B, ¶¶ 25-26. Accordingly, we reject respondent's challenge to the sufficiency of the evidence.

¶ 38                                                    CONCLUSION

¶ 39          The judgment of the circuit court is affirmed.

¶ 40          Affirmed.