2020 IL App (2d) 190935-U
No. 2-19-0935
Order filed December 16, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 17-CF-657 |
| TERRANCE JOHNSON, | ) ) | Honorable John A. Barsanti, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court.
Justices Schostok and Hudson concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Odor of fresh cannabis emanating from vehicle that was in an accident gave officers responding to the scene probable cause to search defendant, the driver, for contraband; this authority extended to searching defendant's jacket that was removed when the paramedics were preparing to place him in the ambulance.

¶ 2   Defendant, Terrance Johnson, was charged with, *inter alia*, unlawful possession of a controlled substance within 1000 feet of a church (720 ILCS 570/407(b)(1) (West 2016)). The charge resulted from an encounter between defendant and police officers who were responding to a motor vehicle accident involving defendant. During the encounter, contraband was discovered in the pocket of defendant's jacket. Defendant moved to suppress that evidence, and the trial court

ultimately granted the motion.  The State now appeals.  We reverse and remand for further proceedings.

¶ 3                                   I. BACKGROUND

¶ 4     At the hearing on the motion to suppress, defendant testified that, on April 1, 2017, the SUV he was driving was involved in a single car accident in Elgin.  He was wearing a black jacket that contained cannabis and cocaine in one of the pockets.  Three officers arrived at the scene. Defendant was in the SUV's passenger seat.  Thereafter, paramedics arrived, and the officers walked defendant over to them.  The paramedics placed defendant on a gurney.  The last time he saw his jacket was when he was with the paramedics.  He denied that he gave the jacket to the police.  Rather, the police removed it from him when he got into the ambulance.

¶ 5     The defense rested after defendant's testimony.  The State then moved for a directed finding on the basis that defendant had not presented evidence that any search or seizure occurred. The trial court denied the motion.

¶ 6     The State called Elgin police officer Sean Callahan as a witness.  He testified that he was dispatched to the scene of the accident.  When he arrived, he observed an extensively damaged black SUV that had struck multiple parked vehicles.  Defendant was alone in the SUV.  He was seated in the driver's seat and appeared to be semiconscious.  Callahan was unable to get defendant out of the vehicle through the driver's side door.  Defendant started to regain alertness, and he unlocked the passenger's side door.  Callahan advised defendant not to move, but defendant climbed into the passenger seat.  Defendant opened the passenger door, and Callahan noticed a strong odor of fresh cannabis and the odor of an alcoholic beverage.  Callahan had been trained to recognize the odor of fresh cannabis and had smelled it on many occasions.

¶ 7    Paramedics had defendant step out of the SUV and walk to an ambulance. The paramedics also had defendant remove his jacket, and they handed it to another police officer at the scene. That officer handed the jacket to Callahan who then put it on the passenger seat of the SUV. On cross-examination, Callahan testified that he did not recall smelling the odor of cannabis coming from the jacket. After putting the jacket in the SUV, Callahan searched the SUV, thoroughly. He found no cannabis. After searching the SUV, Callahan searched defendant's jacket and found contraband in a pocket.

¶ 8    Elgin police officer Michael Rizzuto testified as a rebuttal witness for defendant. He was dispatched to respond to the accident. When he arrived, Callahan was at the scene, as was Officer Neff. Officer Alcorn arrived later. As Rizzuto approached the SUV, defendant was crawling over the center console. Rizzuto opened the SUV's door, at which point he smelled the odor of an alcoholic beverage. Rizzuto spoke with defendant, who appeared to have an altered mental state. Rizzuto never smelled the odor of cannabis. Rizzuto called the paramedics, who arrived 5 to 10 minutes later. Officer Callahan removed defendant's jacket and put it on the SUV's passenger seat. He did so at the request of paramedics so that they could put a cervical collar on defendant.

¶ 9    The trial court initially denied the motion. However, defendant moved to reconsider and the trial court granted the motion, suppressing the evidence recovered from defendant's jacket. The State then moved to reconsider. The trial court denied the motion and this appeal followed.

¶ 10                                II. ANALYSIS

¶ 11    Motions to suppress evidence are governed by the following principles:

"The defendant bears the burden of proof on a motion to suppress evidence. [Citations.] If the defendant makes a *prima facie* showing that the evidence was obtained in an illegal search or seizure, the burden shifts to the State to provide evidence to counter

the defendant's *prima facie* case. [Citation]. The ultimate burden of proof remains with the defendant, however." *People v. Cregan*, 2014 IL 113600, ¶ 23.

We apply a bifurcated standard of review to a trial court's ruling on a motion to quash and suppress. We defer to the trial court's findings of fact, reversing them only if they are against the manifest weight of the evidence. *People v. Heritsch*, 2017 IL App (2d) 151157, ¶ 8. However, we review *de novo* the trial court's legal conclusion whether a search or seizure was unconstitutional. *Id.*

¶ 12    The State initially argues that defendant failed to establish that a search occurred and therefore failed to establish a *prima facie* case of a constitutional violation. Thus, according to the State, the trial court should have granted its motion for a directed finding. The argument is unavailing. After the trial court denied the State's motion, the State put on evidence and failed to renew its motion for a directed verdict at the close of all evidence. The State therefore waived any error in the denial of its motion. *People v. Connolly*, 322 Ill. App. 3d 905, 913 (2001).

¶ 13    The State next argues that the evidence at the suppression hearing does not establish a constitutional violation. The federal and Illinois constitutions guarantee the right of the people to be free from unreasonable searches and seizures. *People v. Gaytan*, 2015 IL 116223, ¶ 20. "A search conducted without a warrant is considered *per se* unreasonable under the fourth amendment unless it falls within one of a limited number of exceptions to the warrant requirement." *People v. Brooks*, 2017 IL 121413, ¶ 27.

¶ 14    In *Carroll v. United States*, 267 U.S. 132 (1925), the United States Supreme Court upheld the warrantless search of a vehicle stopped by law enforcement officers who had probable cause to believe the vehicle contained contraband. The Court reasoned as follows:

"[T]he guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of the government, as

recognizing a necessary difference between a search of a store, dwelling house, or other structure in respect of which a proper official warrant readily may be obtained and a search of a ship, motor boat, wagon, or automobile for contraband goods, where it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." *Id.* at 153.

Probable cause exists when "the totality of the facts and circumstances known to the officer at the time of the search would justify a reasonable person in believing that the automobile contains contraband or evidence of criminal activity." *People v. Hill*, 2020 IL 124595, ¶ 23

¶ 15    After *Carroll* was decided, some courts held that it did not apply once the driver of a vehicle had been arrested and the vehicle had been secured by police. See 3 Wayne R. LaFave, Search and Seizure § 7.2(a) (6th ed. 2020). Those courts reasoned that when the vehicle and the driver are both in custody, there are no exigent circumstances justifying a warrantless search. *Id.* In *Chambers v. Maroney*, 399 U.S. 42, 51 (1970), the Court rejected that reasoning, explaining that, if a vehicle is to be searched at all, it must be either searched immediately or seized and held without a warrant until a warrant to search the vehicle can be obtained. The Court reasoned that an immediate search of the vehicle is not necessarily more intrusive than the warrantless seizure of the vehicle. The reduced expectation of privacy that one has in a vehicle as a result of pervasive governmental regulation further justifies warrantless searches. *California v. Carney*, 471 U.S. 386, 393 (1985).

¶ 16    When there is probable cause to search a vehicle, the search may encompass containers found in the vehicle that are capable of concealing the object of the search. *Wyoming v. Houghton*, 526 U.S. 295, 301 (1999). In *United States v. Ross*, 456 U.S. 798, 821 n. 28 (1982), the Court explained how that rule related to the *Carroll/Chambers* rationale for warrantless vehicle searches:

"The practical considerations that justify a warrantless search of an automobile continue to apply until the entire search of the automobile and its contents has been completed. Arguably, the entire vehicle itself (including its upholstery) could be searched without a warrant, with all wrapped articles and containers found during that search then taken to a magistrate. But prohibiting police from opening immediately a container in which the object of the search is most likely to be found and instead forcing them first to comb the entire vehicle would actually exacerbate the intrusion on privacy interests. Moreover, until the container itself was opened the police could never be certain that the contraband was not secreted in a yet undiscovered portion of the vehicle; thus in every case in which a container was found, the vehicle would need to be secured while a warrant was obtained. Such a requirement would be directly inconsistent with the rationale supporting the decisions in *Carroll* and *Chambers.*"

¶ 17    It is significant here that the authority to search a vehicle does not *automatically* include authority to conduct a warrantless search of its occupants. *United States v. Di Re*, 332 U.S. 581, 586-87 (1948). The *Di Re* court stated, "We are not convinced that a person, *by mere presence in a suspected car*, loses immunities from search of his person to which he would otherwise be entitled." (Emphasis added.) *Id.* at 587. However, an occupant may be searched in connection with a motor vehicle search when, beyond his or her mere presence in the vehicle, there is probable cause to believe that he or she has committed a crime. *People v. Williams*, 2013 IL App (4th) 110857, ¶¶ 25-26, 34. As a prominent commentator has observed:

"If there are grounds for arrest of the occupant, then the likely consequence will be arrest of that individual and then search of his person incident to that arrest. But, especially if the search of the person should precede the arrest, a court might instead uphold the search

on the ground that in this particular case, unlike the *Di Re* case ***, there was probable cause to search the vehicle and that individual." (Emphasis omitted.) 3 Wayne R. LaFave, Search and Seizure § 7.2(e) at 819 n. 219 (6th ed. 2002).

¶ 18    In the same vein, the high court of a sister state has noted that "*Di Re* *** [does] not foreclose the possibility that probable cause to search the occupants of a vehicle may exist." *State v. Fewell*, 184 P.3d 903, 912 (Kan. 2008). The *Fewell* court added, however, that "in order to validate such a search, the State must establish that probable cause exists that the particular occupant searched has engaged or is engaging in some criminal activity." *Id.*

¶ 19    The State relies principally on *People v. Stout*, 106 Ill. 2d 77 (1985), in which our supreme court upheld the warrantless search of the defendant, which resulted in the discovery of cocaine and codeine. The officer who conducted the search had stopped the defendant's vehicle after observing him make an illegal turn. The officer searched the defendant after detecting the odor of burning cannabis through the open window of the vehicle. After surveying Appellate Court precedent, the *Stout* court concluded that the odor of cannabis supplied probable cause for the search. *Id.* at 87-88.

¶ 20    Likewise, the Third District has recently explained that "[t]he case law has *** evolved to recognize that the smell of cannabis emanating from a vehicle provides probable cause for law enforcement to search the driver of the vehicle and the passengers traveling in the vehicle." *People v. Burns*, 2020 IL App (3d) 170103, ¶ 34 (citing *People v. Williams*, 2013 IL App (4th) 110857, ¶¶ 23-34; *People v. Rice*, 2019 IL App (3d) 170134, ¶ 19; *People v. Zayed*, 2016 IL App (3d) 140780, ¶ 22-23; and *In re O.S.*, 2018 IL App (1st) 171765, ¶ 26). For purposes of this rule, there is no distinction between "raw" cannabis and burnt cannabis. *Burns*, 2020 IL App (3d) 170103, ¶ 37.

¶ 21    Based on these principles, it is clear that, upon encountering defendant in a vehicle and smelling the odor of cannabis, Callahan was authorized to search defendant and his clothing.  In view of defendant's need for medical attention, such a search would have been inexpedient, to say the least, as to clothes that defendant was wearing while receiving treatment.  However, while paramedics were attending to defendant, his jacket was removed for purposes of treating him.  There is no claim that the removal of the jacket was constitutionally objectionable, and we can think of no sound reason why the lawful removal of the jacket should affect Callahan's authority to search it.  Removal of the jacket did not decrease the likelihood that contraband or evidence of a crime would be found in it.  Moreover, the policies underlying the rule permitting law enforcement officers to search containers in an automobile (rather than seizing and securing them pending issuance of a warrant) apply with equal force to an item of clothing that was subject to being searched when an occupant of a motor vehicle was wearing it.

¶ 22    Defendant argues that the State's reliance on *Stout* is misplaced because defendant's vehicle "was immobile and incapable of leaving the scene or unable to be secured by law enforcement until a warrant was obtained."  As discussed, however, under *Chambers*, authority to search a vehicle does not depend on its mobility.  Defendant also argues that Callahan's failure to detect the odor of fresh cannabis coming from defendant's jacket dispelled any suspicion that cannabis would be found in the jacket.  That reasoning is inconsistent with the reasoning in *Stout*, which upheld the warrantless search of the defendant based on the smell of *burning* cannabis in the vehicle. Obviously, burning cannabis would not have been found concealed on the defendant's person.  Defendant also urges us to overrule *Stout*.  We have no power to overrule decisions of our supreme court.  *Doyle v. Hood*, 2018 IL App (2d) 171041, ¶ 35.  Accordingly, we conclude that the trial court erred in granting the motion to suppress.

¶ 23                                    III. CONCLUSION

¶ 24     For the foregoing reasons the judgment of the circuit court of Kane County is reversed, and

the case is remanded for further proceedings.

¶ 25     Reversed and remanded.