# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Smith*, 2012 IL App (2d) 120307

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. LOUIS M. SMITH, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-12-0307 |
| Filed | December 27, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Pursuant to the decision of the Illinois Supreme Court in *Stout*, an officer's detection of the odor of raw marijuana coming from defendant's car following a traffic stop for a cracked windshield was sufficient to provide probable cause to extend the stop and search the car. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 11-CM-1289; the Hon. Joseph R. Waldeck, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Michael J. Waller, State's Attorney, of Waukegan (Lawrence M. Bauer, Edward R. Psenicka, and Scott Jacobson, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Thomas A. Lilien and Josette Skelnik, both of State Appellate Defender's Office, of Elgin, for appellee.

Panel

JUSTICE ZENOFF delivered the judgment of the court, with opinion.

Justices Jorgensen and Spence concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Louis M. Smith, was charged with unlawful possession of cannabis (720 ILCS 550/4(b) (West 2010)) and unlawful possession of drug paraphernalia (720 ILCS 600/3.5(a) (West 2010)). He moved to suppress evidence that the arresting officer obtained after a traffic stop. The trial court granted the motion, holding that the officer's testimony that he smelled the odor of fresh cannabis did not provide the probable cause needed to extend the stop and search the vehicle. The State appeals. We reverse and remand.

¶ 2    At the hearing on defendant's motion, the sole witness was Antioch police officer Ari Briskman. On direct examination, he testified as follows. His training included recognizing the odor of burnt cannabis. In his 4½ years as an officer, he had smelled the odor of burnt cannabis about 200 times and the odor of fresh cannabis more than 100 times. On March 25, 2010, at about 6:08 p.m., he stopped a car because its windshield was cracked. Defendant was driving and had one passenger. As Briskman approached the driver's side of the car, he smelled "a slight odor of cannabis" coming from inside. The cannabis smelled "fresh." Briskman based his conclusion on his training and experience in detecting the odor of fresh cannabis.

¶ 3    Briskman testified that, after he obtained defendant's identification and proof of insurance, he returned to his squad car, ran license checks on defendant and the passenger, then returned to defendant's car. At Briskman's direction, defendant exited the car. Briskman explained to defendant that he had smelled fresh cannabis coming from the car, and he asked defendant's consent to search. Defendant refused to consent. Briskman then said that he would be calling a K-9 unit to "conduct a sniff" of the car's exterior and would also be issuing defendant traffic citations. At Briskman's direction, defendant reentered the car.

¶ 4    Briskman testified that he returned to his squad car, requested the K-9 unit, and started processing the traffic citations. He was still completing them when the K-9 unit arrived. Briskman had defendant and his passenger step out as the dog sniffed the car's exterior. After the dog alerted to the driver's side, Briskman searched the car. Below the driver's seat was

a prescription-pill bottle that contained wadded-up tissues; a green, leafy substance that smelled of fresh cannabis; and a pipe that smelled of burnt cannabis. The odors were consistent with those that Briskman had smelled before. Based on his training and experience, he concluded that the green leafy substance was cannabis and that the pipe was used to smoke cannabis.

¶ 5    Briskman testified on cross-examination as follows. When he returned to his squad car, he wrote up the traffic citations, completed a racial profiling data form, and "add[ed] notes to the call on the computer." These routine steps normally take "anywhere from 10 to 15 minutes." The pill bottle that he found had "tissues wadded at the top of it."

¶ 6    A video played at the hearing showed that Briskman stopped defendant's car at 6:07 p.m. At about 6:15 p.m., he requested consent to search the car and defendant refused. Immediately afterward, Briskman started to write up the citations. At 6:45 p.m., the K-9 unit began the drug sniff.

¶ 7    In arguments, the State contended that the initial traffic stop had been valid and that Briskman's detection of the odor of fresh cannabis, which he recognized from his experience, provided probable cause to search the car. The State argued that, under *People v. Stout*, 106 Ill. 2d 77 (1985), Briskman's testimony did not need corroboration. Defendant responded that, although the initial stop had been proper, Briskman had unduly prolonged it beyond the time needed to process the traffic offense. See *People v. Cosby*, 231 Ill. 2d 262, 275-76 (2008). Defendant noted that, according to the video, the K-9 unit did not arrive until 30 minutes after Briskman started processing the traffic citations, which regularly takes only 10 to 15 minutes. Disputing the State's assertion that Briskman's detection of the odor of cannabis provided probable cause, defendant contended that, had Briskman really believed that he smelled cannabis, he would have searched the car immediately instead of requesting the K-9 unit. The State replied that Briskman's subjective belief was legally irrelevant; objectively, the odor of cannabis provided probable cause, allowing Briskman to detain defendant longer than was needed to process the traffic offense.

¶ 8    In granting defendant's motion, the trial judge explained that Briskman had lacked the probable cause needed to extend the stop and to search the car. The judge distinguished *Stout* as "deal[ing] with burnt cannabis," which Briskman had not initially smelled. The judge did not appear to question Briskman's credibility or to discredit his testimony that, based on his experience, he had detected the odor of fresh cannabis coming from within defendant's car. The trial court denied the State's motion to reconsider. The State appeals (see Ill. S. Ct. R. 604(a)(1) (eff. July 1, 2006)).

¶ 9    On appeal, the State contends that the trial court erred in distinguishing *Stout* on the basis that *Stout* addresses the odor of burnt cannabis and therefore does not apply here, as Briskman based his search on what he perceived as the odor of raw (or "fresh") cannabis. The State asserts that, although *Stout* did involve a search based on the odor of burnt cannabis, its rationale applies equally to one based on the odor of raw cannabis. For the following reasons, we hold that *Stout* does apply here, necessitating the reversal of the suppression order.

¶ 10   In reviewing a ruling on a motion to suppress, we defer to the trial court's findings of

-3-

fact, which we must accept unless they are against the manifest weight of the evidence, but we consider *de novo* the ultimate question of whether the search was constitutional. *People v. McDonough*, 239 Ill. 2d 260, 265-66 (2010). The evidence at the hearing was undisputed, and it does not appear that the trial judge discredited Briskman's testimony in any way. Because the court's ruling was based solely on its refusal to extend *Stout* to a given set of facts, this appeal presents a question of law, which we review *de novo*.

¶ 11 We begin our analysis with *Stout*. There, the undisputed evidence at the hearing on the defendant's motion to suppress revealed the following. Officer Eakle stopped the defendant for a traffic offense. As Eakle stood near the rolled-down window of the driver's door, he detected the odor of burning cannabis. Eakle testified at the hearing that his training and experience as a police officer (and as a college student) had enabled him to recognize the odor of burning cannabis. A warrantless search of the car turned up other controlled substances, and the defendant was charged with possessing them. *Stout*, 106 Ill. 2d at 80-82. He moved to suppress the evidence, arguing that Eakle had lacked probable cause for the search. *Id.* at 81. The trial court held that Eakle's uncorroborated testimony that he smelled the odor of burning cannabis did not provide the probable cause needed for the search. The trial judge explained that, although he credited Eakle's testimony, he felt bound by opinions of the Third District (which we note in the next paragraph). *Id.* at 82. The appellate court affirmed, but the supreme court reversed. *Id.* at 88.

¶ 12 Our supreme court noted that the appellate court was divided on whether the odor of cannabis provides probable cause to search a vehicle (*id.* at 82-85; see (in order of discussion in *Stout*) *People v. Smith*, 67 Ill. App. 3d 952, 960 (5th Dist. 1978) (yes); *People v. Laird*, 11 Ill. App. 3d 414, 415 (5th Dist. 1973) (yes); *People v. Erb*, 128 Ill. App. 2d 126, 132 (2d Dist. 1970) (yes); *People v. Loe*, 16 Ill. App. 3d 291, 293 (3d Dist. 1973) (yes); *People v. Argenian*, 97 Ill. App. 3d 592, 594 (3d Dist. 1981) (no); *People v. Wombacher*, 104 Ill. App. 3d 812, 817 (3d Dist. 1982) (no)). We note that all of these cases involved the odor of burnt cannabis; none involved raw marijuana. After noting that the "automobile exception" to the warrant requirement can validate a warrantless search if there is probable cause (*Stout*, 106 Ill. 2d at 86-87), the court in *Stout* continued:

"Officer Eakle testified that he detected the odor of burning cannabis from inside the defendant's car. This 'detection' was not based upon an unfounded assumption. To the contrary, Officer Eakle testified that he had smelled the odor of burning cannabis on 'numerous other occasions' during his seven-year employment as a patrol officer. The trial judge found that Eakle's testimony was 'credible,' a finding which we feel is supported by the record in this case.

This court has held that distinctive odors can be persuasive evidence of probable cause. A police officer's detection of controlled substances by their smell has been held to be a permissible method of establishing probable cause. ***

In the case at bar, it was the duty of Officer Eakle, when confronted with circumstances which tended to indicate that criminal activity was taking place, to investigate ***. Based on the particular facts of this case, including the officer's experience and training in the detection of controlled substances, we find that probable

cause existed to justify the warrantless search." *Id.* at 87.

¶ 13    Having thus implied that establishing probable cause requires some evidentiary foundation for an officer's identification of a particular odor as that of burnt marijuana, the court refused to "define the exact number of training hours or employment years necessary to render an officer's belief reliable." *Id.* Rather, "what constitutes probable cause for searches and seizures must be determined from the standpoint of the officer, with *his skill and knowledge* being taken into account, and the subsequent credibility determinations must be made by the trial court." (Emphasis in original.) *Id.* Finally, the court rejected any requirement that the officer's olfactory identification be corroborated. "Such *** corroboration is not required where a trained and experienced police officer detects the odor of cannabis emanating from a defendant's vehicle." *Id.* at 88.

¶ 14    *Stout* is almost on all fours with this case. As did the officer in *Stout*, Briskman relied solely on what he perceived to be the odor of cannabis to provide the probable cause needed for the vehicle search. As did the officer in *Stout*, he testified that he had considerable training and experience in the identification and detection of the odor in question, and the trial court did not discredit his testimony in any way. As in *Stout*, there was no corroboration of the officer's olfactory evidence. There is only one arguable distinguishing fact, and that is the one on which the trial court relied: here, the officer detected the odor of raw cannabis, not that of burnt cannabis. Does this difference support the different result? For several reasons, we hold that it does not.

¶ 15    First, we note that, although the facts of *Stout*–and the appellate court cases that it cited–involve burnt marijuana rather than raw marijuana, nothing in *Stout* suggests that the supreme court considered that difference material. Nothing in the opinion is inconsistent with applying its holding to either situation. From our reading of *Stout*, we cannot say that the present case is distinguishable by the precise odor involved.

¶ 16    Second, not only does *Stout* set up no obstacle to applying its holding to raw marijuana, it strongly signals to us that we should do so. Although the facts of *Stout* involve burnt marijuana, the supreme court's rationale applies "next door" to raw marijuana, if not to the entire neighborhood of olfactory evidence. The court based its holding on the recognition that "distinctive odors can be persuasive evidence of probable cause" and that an officer may establish probable cause by "detect[ing] controlled substances by their smell." *Id.* at 87. These statements obviously encompass more than burnt marijuana. Finally, our supreme court held that corroboration is unnecessary "where a trained and experienced police officer detects the odor of *cannabis* emanating from a defendant's vehicle." (Emphasis added.) *Id.* at 88. There is no modifier preceding "cannabis." Considered on any level of generality, *Stout* provides no textual support for limiting its holding to cases involving the odor of burnt cannabis and provides compelling textual support for including within its holding cases involving the odor of raw cannabis.

¶ 17    We can see no basis to limit *Stout*'s holding as the trial court did. In arguing otherwise, defendant directs us to a 2004 article summarizing the results of experiments purportedly demonstrating that, in circumstances comparable to those here, the odor of raw cannabis cannot be discerned. See Richard L. Doty, Thomas Wudarski, David A. Marshall, & Lloyd

Hastings, *Marijuana Odor Perception: Studies Modeled from Probable Cause Cases*, 28 Law & Hum. Behav., 223, 223-24 (Apr. 2004). Defendant never introduced this evidence at the trial court level, making it impossible for the State to respond there. It is rather late to reopen the suppression hearing or to attack the credibility of the State's witness. To the extent that defendant requests us to treat olfactory evidence as a form of scientific evidence that must be subject to a threshold determination of reliability (see *People v. McKown*, 226 Ill. 2d 245, 254 (2007); *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923)), we decline to do so. We are aware of no authority from this jurisdiction, or any other, applying the *Frye* rule to a police officer's nose. Most important, *Stout* does not. Whatever the validity of the study that defendant seeks to introduce, it is not properly before us under the facts of this case.

¶ 18     Defendant also attempts to distinguish this case on the basis that Briskman's testimony that he smelled the "slight odor" of marijuana coming from a covered pill bottle under the driver's seat was inherently implausible. The trouble with defendant's argument is that, as best we can tell, the trial court did not so find. As *Stout* instructs, the credibility of the officer's testimony is for the trial court, not the court of review, to decide. Although the trial judge stated that this case is distinguishable from *Stout* because it involves raw cannabis, not burnt cannabis, the judge never suggested that Briskman was not credible or that Briskman was incapable of discerning the smell of raw marijuana in the circumstances to which he testified. We cannot say that Briskman's testimony was so inherently implausible that the trial court was obligated to reject it. Briskman's training and experience may well have made even the "slight odor" of marijuana detectable to him, even if not to others who lacked his training. Further, the odor may have been "slight" precisely because the cannabis was concealed in a covered bottle under a seat. In short, defendant has not persuaded us that *Stout* can be either limited or distinguished.

¶ 19     Finally, insofar as the issue in this case is left open by Illinois authority, the great weight of foreign authority holds that, in a case involving raw rather than burnt marijuana, "the smell of marijuana [is] alone sufficient to furnish probable cause to search a vehicle without a warrant, at least where there is a sufficient foundation as to expertise." *State v. Benson*, 251 N.W.2d 659, 661-62 (Neb. 1977) (*per curiam*); see, *e.g.*, *United States v. Johns*, 469 U.S. 478, 482 (1985) (*dicta*); *United States v. Downs*, 151 F.3d 1301, 1303 (10th Cir. 1998); *Key v. State*, 566 So. 2d 251, 254 (Ala. Crim. App. 1990); *State v. Harrison*, 533 P.2d 1143, 1144 (Ariz. 1975); *State v. Gonzales*, 789 P.2d 206, 207 (Idaho Ct. App. 1990); *People v. Kazmierczak*, 605 N.W.2d 667, 672 (Mich. 2000); *Boches v. State*, 506 So. 2d 254, 264 (Miss. 1987); *State v. Villa-Perez*, 835 S.W.2d 897, 902 (Mo. 1992) (*en banc*); *State v. Capps*, 641 P.2d 484, 487 (N.M. 1982); *People v. Maier*, 366 N.Y.S.2d 660, 662 (N.Y. App. Div. 1975).[1] We find additional support for our holding in these opinions, but we conclude

---

[1]In *United States v. Dien*, 609 F.2d 1038, 1045 (2d Cir. 1979), the court held that, even though officers smelled the odor of raw marijuana emanating from closed cardboard boxes stored in a vehicle, they could not constitutionally open the boxes. It is not clear whether the court's reasoning is based on a probable-cause analysis or on a limitation on the "automobile exception" even in a case where there is probable cause. It is even less clear whether the Second Circuit would

that *Stout* compels it in any event.

¶ 20      For the foregoing reasons, the interlocutory order of the circuit court of Lake County is reversed, and the cause is remanded.

¶ 21      Reversed and remanded.

---

decide the case the same way today or whether Illinois courts would accept *Dien*'s analysis. Here, defendant has challenged, and the trial court considered, only whether *Stout* provided probable cause, not the scope of a search based on probable cause.