# Illinois Official Reports

## Appellate Court

***People v. Burns*, 2020 IL App (3d) 170103**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BOBBY L. BURNS III, Defendant-Appellant. |
| District & No. | Third District<br>No. 3-17-0103 |
| Filed | March 27, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 15-CF-405; the Hon. Stephen A. Kouri, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part.<br>Cause remanded with directions. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Peter Sgro, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Jodi Hoos, State's Attorney, of Peoria (Patrick Delfino, Thomas D. Arado, and Nicholas A. Atwood, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE WRIGHT delivered the judgment of the court, with opinion.<br>Presiding Justice Lytton and Justice Holdridge concurred in the judgment and opinion. |

**OPINION**

¶ 1 The State charged defendant, Bobby L. Burns III, by indictment with armed violence, unlawful possession of a controlled substance, and aggravated unlawful use of a weapon. After the trial court denied defendant's motion to quash arrest and suppress evidence, the trial court found defendant guilty on all three charges following a stipulated bench trial. The court sentenced defendant to a 15-year term of imprisonment in the Illinois Department of Corrections. Defendant appeals.

¶ 2 I. BACKGROUND

¶ 3 On June 30, 2015, the State charged defendant by indictment with armed violence (720 ILCS 5/33A-2(a) (West 2014)), unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2014)), and aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(2), (a)(3)(C) (West 2014)). The charges stemmed from a traffic stop that occurred on or about June 16, 2015. On March 3, 2016, defendant filed a motion to quash arrest and suppress evidence (motion to suppress), arguing that law enforcement improperly detained defendant and conducted a warrantless search absent probable cause, consent, or exigent circumstances. Defendant requested that the trial court suppress both the statements and physical evidence obtained as a result of the unlawful arrest and subsequent search.

¶ 4 On April 21, 2016, defendant testified before Judge Kouri during the hearing on defendant's motion to suppress. Defendant revealed that on June 16, 2015, at approximately 3 p.m., he was travelling in the front passenger's seat of a vehicle driven by John Montgomery. When defendant entered Montgomery's vehicle, Montgomery mentioned that he thought the vehicle was being followed. Defendant noticed a red vehicle following them.

¶ 5 According to defendant, though Montgomery committed no traffic infractions, a police car activated its lights and pulled the vehicle over near the intersection of Garden Street and Western Avenue in Peoria. Two officers approached the vehicle and asked the pair for identification. Defendant did not have his identification but provided his name to the officer.

¶ 6 After running his name through the system, one of the officers returned to the vehicle and informed defendant that he was not in the system. The officer ordered defendant out of the vehicle and grabbed defendant's wrist. The officer searched defendant's person but did not find anything unlawful in his possession. The officers also searched the vehicle. Defendant did not know what the officers recovered from Montgomery's vehicle.

¶ 7 Officer Leach of the Peoria Police Department testified that, on June 16, 2015, he was part of a law enforcement unit following Montgomery's vehicle at approximately 3:35 p.m. Leach explained that a group of seven officers took turns conducting surveillance on the vehicle. Leach drove an unmarked surveillance vehicle accompanied by Officer Westart and a canine. Leach's vehicle did not have recording equipment. Leach observed the driver of the vehicle fail to timely activate his turn signal when turning at the intersection of Garden Street and Western Avenue. Officer Hutchinson, who was travelling in another vehicle, informed Leach by telephone that the driver also committed a stop sign violation. Based on this information, Leach initiated a traffic stop.

¶ 8 Leach approached the driver's side while Westart approached the passenger's side of the vehicle. The driver, Montgomery, rolled down the window, and Leach immediately detected

the odor of cannabis, which he had seen and smelled before. Westart advised defendant and Montgomery that they would have to exit the vehicle due to the cannabis odor. Leach could also smell a strong odor of cannabis emanating from the passenger's side of the vehicle. Leach testified that when the officers opened the passenger door and asked defendant to step out, defendant complied. Neither officer attempted to grab defendant or pull defendant out of the vehicle.

¶ 9 Leach followed defendant as he exited the passenger's side and walked to the rear of the vehicle. At this time, Leach observed what appeared to be a handgun handle sticking out of defendant's right rear pants pocket. Leach reacted by detaining defendant. The officers located a handgun in defendant's rear pants pocket.

¶ 10 On cross-examination, Leach identified the firearm discovered on defendant's person as a .45-caliber pistol. Leach did not have to manipulate defendant's clothing to view the firearm, as it was a large pistol with a large hand grip.

¶ 11 Pursuant to questioning by the trial court, Leach revealed that during the search of the vehicle, the officers recovered a large plastic bag with over 14 grams of cannabis inside of a backpack on the passenger floorboard. Officers also recovered one joint inside of the backpack; however, Leach could not recall if the joint was burnt on the end or not.

¶ 12 Westart, an officer with the Peoria Police Department, testified that he was also part of the surveillance operation. Westart's testimony was consistent with Leach's testimony concerning the undercover surveillance operation and the driver's failure to signal properly. After the stop, Westart observed furtive movements inside the vehicle, as the passenger leaned forward and appeared to be "messing with something that was on the ground." As Westart stood near the passenger door, defendant appeared nervous, was fidgeting, and was rubbing his face. After Leach returned from running identity checks on the vehicle's occupants, he informed Westart that he smelled cannabis coming from the vehicle. Leach wanted defendant to exit the vehicle due to the cannabis odor and defendant's furtive movements. Westart opened the passenger door and could smell a strong odor of unburnt cannabis. Defendant exited the vehicle on his own accord, and Westart requested that defendant walk to the rear of the vehicle.

¶ 13 Next, Westart observed the handle of a gun in defendant's right rear pants pocket. Westart heard Leach shout "Gun!" Leach put defendant's left arm in a wrist rotation, and Westart grabbed defendant's right arm. The officers secured defendant in handcuffs. After detaining defendant, Westart conducted a pat down of the exterior of defendant's clothing with his hands to check for weapons and contraband. Westart discovered a pill bottle in defendant's front right pocket, containing a couple of pills, and three small plastic bags, containing a white powdery substance he believed to be cocaine. Westart discovered a handgun in defendant's right rear pants pocket.

¶ 14 On cross-examination, Westart testified that the officers were following Montgomery that day and did not know defendant was riding in the vehicle. The officers had no prior information that defendant was committing a crime. Westart stated that defendant was being detained and was not free to leave at the time Westart requested that defendant exit the vehicle due to the smell of cannabis and defendant's furtive movements. Montgomery was still seated in the vehicle at this time. Westart explained that defendant, not Montgomery, was asked to exit the vehicle due to the furtive movements. The backpack that was later seized from the passenger floorboard contained a handgun and some ammunition.

¶ 15     On April 22, 2016, after taking the ruling under advisement, Judge Kouri denied defendant's motion to suppress. Following the ruling on the motion to suppress, defendant dismissed his assistant public defender and hired a private attorney. On November 7, 2016, defendant filed a motion to reopen the hearing on defendant's motion to suppress. Judge Kouri granted defendant's motion to reopen the evidence for purposes of the suppression hearing, and the case proceeded to a second hearing.

¶ 16     At the second hearing, Leach testified that the officers were conducting a drug investigation on the date in question that did not involve defendant. Leach explained that officers had previously conducted two controlled drug buys from the individual that drove the vehicle in question. During the traffic stop in question, Leach detected the odor of burnt cannabis emitting from the driver's side window but did not observe any smoke. Leach was trained to detect the smell of cannabis and had smelled cannabis hundreds of times.

¶ 17     Leach recovered a backpack from the passenger floorboard of the vehicle that had two unzipped compartments. One compartment contained a handgun, some loose ammunition, and paperwork. The second compartment contained a plastic bag of cannabis, a package of Swisher Sweets with some cannabis inside, and a small blunt. Leach could not tell whether the odor of cannabis originated solely from the backpack because the car still smelled like cannabis after he removed the backpack. The cannabis in the bag was not burnt; however, Leach believed the blunt had a burnt end. Leach could smell the cannabis through the plastic bags. Lastly, Leach testified that defendant wore a T-shirt and shorts that did not obscure Leach's view of defendant's back pockets.

¶ 18     Montgomery testified that after the stop, the officers approached on both sides of the vehicle. The officers did not tell Montgomery that they smelled cannabis. Montgomery denied smoking cannabis that day. Montgomery testified that he sprayed air freshener in his car that day to make the car smell good. One officer inquired about Montgomery's Florida plates and stated that he would conduct a check to see if the vehicle was stolen. When the officer returned, he told defendant to exit the vehicle because defendant had no identification. Then, the officers ordered Montgomery out of the vehicle because they found contraband on defendant.

¶ 19     Defendant testified that he did not smoke cannabis that day and that the vehicle did not smell like cannabis. Defendant sprayed air freshener in the vehicle when he knew they were being pulled over because police officers often say they smell cannabis. Defendant stated that the back pocket of his shorts would not have been visible to the officers because his T-shirt covered the back pocket.

¶ 20     Following the additional testimony, the trial court again denied defendant's motion to suppress, at which time defense counsel informed the court that defendant would be moving forward with a stipulated bench trial. Then, the following conversation took place between the parties and the court:

> "THE COURT: Do you want to do it right now or do you want to do it at 1:00?
>
> [DEFENSE COUNSEL]: 1:00 is fine. That means I have a few minutes to talk to my client.
>
> [THE STATE]: Just so that I know, is it, in fact, stipulated?
>
> [DEFENSE COUNSEL]: Yeah. I'm going to ask the stipulation to be entered with [the State's] cooperation.

[THE STATE]: Can I ask then, Judge, also is [defense counsel]—just in terms of the admonishments we have to give [defendant] whether it's stipulating just to the evidence or stipulating that there would also be a finding of guilt at the end of it? It only matters, I suppose, in terms of what admonishments to give. Do we have to admonish him almost as if a guilty plea if [defendant] is also conceding he would be found guilty?

[DEFENSE COUNSEL]: I guess I would concede based upon the Court's ruling the evidence is admitted and I would stipulate to the evidence you heard at both—

THE COURT: At both cases.

[DEFENSE COUNSEL]: —at both cases and all the evidence you have heard on the motion to suppress in [defendant's] case and Mr. Montgomery's case. And he would obviously—I would stipulate to the evidence of what his lab found and them carrying the stuff to the lab. That would be the additional evidence that we have not heard in the motion to suppress. And, based upon that, the Court can make a ruling as to my client's guilt or innocence.

THE COURT: So you would stipulate to the evidence as well as you would stipulate that the evidence would be sufficient for a finding of guilt?

[DEFENSE COUNSEL]: Yes.

THE COURT: But you are preserving your right to appeal—

[DEFENSE COUNSEL]: Correct.

THE COURT: —and challenge the motion to suppress?

[DEFENSE COUNSEL]: Correct.

[THE STATE]: We can, I suppose, do that now. It would be, I suppose, just like a plea.

THE COURT: Well, I'm going to give him a lot of admonitions. I mean, I'm going to walk him through it. Let's break until 1:00 so if [defense counsel] wants to talk to his client and the rest of us can break for lunch."

¶ 21       The following conversation took place between the parties and the court following the brief recess:

"[DEFENSE COUNSEL]: Well, we are ready to do the stipulated bench trial.

THE COURT: So my understanding is you are going to stipulate to all the evidence that was—you are stipulating that I am to consider all the evidence that was presented in both [defendant's] proceedings and Mr. Montgomery's proceedings, which I don't have that case number.

[DEFENSE COUNSEL]: Yes. You have heard both of those, yes.

THE COURT: I don't have that case number.

[DEFENSE COUNSEL]: I might, Judge, because I have the transcript.

[THE CLERK]: 15-CF-406.

THE COURT: 15-CF-406, People versus Montgomery.

[DEFENSE COUNSEL]: Yeah. I think that's right.

THE COURT: So you, [defense counsel], are—on behalf of your client are stipulating that I consider all of that evidence.

[DEFENSE COUNSEL]: Yes.

THE COURT: Let me go through a few questions with you, [defendant]."

¶ 22    The trial court proceeded with admonitions to defendant. The court ascertained defendant's age, citizenship, ability to read and write English, and education level. Defendant stated that he had discussed this decision with his attorney and that he was satisfied with his attorney's services. The trial court stated "[a]nd do you understand what we are doing here today? We are having what we call a stipulated bench trial which means I'm going to consider all the evidence that's already been submitted, but you are not going to submit any additional evidence." Defendant stated that he understood.

¶ 23    Judge Kouri explained to defendant the elements of armed violence and stated that the applicable sentencing range was 15 to 30 years and that armed violence was a mandatory prison sentence which had a 3-year term of mandatory supervised release. The trial court further explained the elements and applicable sentencing ranges of both unlawful possession of a controlled substance and aggravated unlawful use of a weapon to defendant. Defendant stated that he understood each charge and potential penalty. The court admonished defendant about his right to an attorney, right to call and cross-examine witnesses, right to testify or not to testify, as well as the State's burden of proof. Concerning defendant's right to a jury trial, the trial court stated: "[y]ou have a right to have—well, you have waived your right to a jury trial." The trial court found defendant guilty on all counts.

¶ 24    Next, the State supplemented the stipulation with facts concerning the chain of possession and condition of the firearm, that the substance found on defendant's person tested positive for cocaine, and that defendant did not have a Firearm Owner's Identification (FOID) card. Defense counsel stipulated to the additional evidence.

¶ 25    On December 29, 2016, the trial court denied defendant's motion for judgment notwithstanding the verdict, and the trial court proceeded to a sentencing hearing. The parties agreed that judgment should only be entered on the most serious offense, the armed violence count, and that the sentence should be the minimum of 15 years. Judge Kouri remarked that a mandatory minimum 15-year sentence was disproportionate to the crime committed and that he was very uncomfortable handing down a 15-year sentence. The court continued the case to verify that boot camp was not a sentencing option for the trial court to impose in defendant's case.

¶ 26    On February 3, 2017, defense counsel confirmed that the mandatory minimum sentence for armed violence was 15 years at 85% with 3 years of mandatory supervised release. With a great deal of reluctance, the trial court sentenced defendant to 15 years in the Illinois Department of Corrections to be served at 85%. The court denied defendant's motion to reconsider his sentence. Defendant filed a timely notice of appeal.

¶ 27    Later, on March 1, 2017, the trial court filed an order to supplement its comments from the sentencing hearing. The court stated that it recently became aware of *People v. Busse*, 2016 IL App (1st) 142941, and that if the court had been aware of the *Busse* decision, it would have imposed a sentence below the mandatory minimum of 15 years.

¶ 28                                    II. ANALYSIS

¶ 29    Defendant argues on appeal that the trial court erred by denying defendant's motion to suppress, that defendant received ineffective assistance of counsel at the suppression hearings,

that the trial court failed to properly admonish defendant during sentencing, that the sentencing provisions of the armed violence statute were unconstitutional as applied to defendant, and that the trial court erred by ordering defendant to serve 85% of his sentence absent a finding of great bodily harm. We address defendant's arguments sequentially below.

¶ 30                                    A. Motion to Suppress

¶ 31     Defendant's first argument on appeal concerns the trial court's denial of defendant's motion to suppress evidence discovered by law enforcement following the traffic stop. Importantly, defendant does not contest the validity of the traffic stop. Instead, defendant, a passenger in Montgomery's vehicle at the time of the traffic stop, contends that neither the smell of cannabis nor the possession of a handgun provided law enforcement with probable cause to arrest defendant and search his person. Due to the absence of probable cause, defendant argues the trial court erroneously denied his motion to suppress. The State argues that the trial court properly denied defendant's motion to suppress because, under the totality of the circumstances, the officers had probable cause to search the passenger compartment of the vehicle and defendant's person.

¶ 32     Reviewing courts apply a two-part standard of review when ruling on motions to suppress evidence. *People v. Hopkins*, 235 Ill. 2d 453, 471 (2009). Reviewing courts afford great deference to the trial court's factual findings and will only reverse such findings if they are against the manifest weight of the evidence. *Id.* A trial court's factual findings are against the manifest weight of the evidence where the opposite conclusion is clearly evidenced, or where the trial court's ruling is unreasonable, arbitrary, or not based on the evidence. *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). However, the trial court's ultimate legal ruling concerning suppression, based on an assessment of the facts as they relate to the legal issues, is subject to our *de novo* review. *People v. Luedemann*, 222 Ill. 2d 530, 542-43 (2006). The trial court's decision may be affirmed on any basis supported in the record. *People v. Anderson*, 401 Ill. App. 3d 134, 138 (2010).

¶ 33     Both the United States and Illinois Constitutions protect individuals from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. Generally, a warrantless seizure is unreasonable absent a specific exception to the warrant requirement. *People v. Jones*, 215 Ill. 2d 261, 269 (2005). Under the automobile exception, officers may conduct warrantless searches of lawfully stopped vehicles where probable cause exists to believe the vehicle contains contraband or evidence of criminal activity. *People v. James*, 163 Ill. 2d 302, 312 (1994). "Probable cause means that there is a reasonable ground for belief of guilt and that the belief of guilt must be particularized with respect to the person to be searched or seized." *People v. Rice*, 2019 IL App (3d) 170134, ¶ 18. When determining the existence of probable cause, officers are entitled to rely on their training and experience to draw inferences and make deductions. *Id.* Ultimately, probable cause exists where the facts known to the arresting officer at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant is engaged in criminal activity. *Id.*

¶ 34     Since our supreme court's decision in *People v. Stout*, 106 Ill. 2d 77 (1985), Illinois courts have repeatedly recognized that the smell of burnt or raw cannabis emanating from a vehicle provides officers familiar with and trained in the detection of controlled substances with probable cause to search a vehicle. See *Rice*, 2019 IL App (3d) 170134, ¶¶ 19, 25 (holding that the smell of burnt cannabis provides officers trained in the detection of controlled substances

with probable cause to search a vehicle); see *People v. Smith*, 2012 IL App (2d) 120307, ¶¶ 16, 19 (holding that the search of a vehicle as provided for in *Stout* also applies based on the odor of raw cannabis). The case law has further evolved to recognize that the smell of cannabis emanating from a vehicle provides probable cause for law enforcement to search the driver of the vehicle and the passengers traveling in the vehicle. *People v. Williams*, 2013 IL App (4th) 110857, ¶¶ 23-34; *Rice*, 2019 IL App (3d) 170134, ¶ 19; *People v. Zayed*, 2016 IL App (3d) 140780, ¶¶ 22-23; *In re O.S.*, 2018 IL App (1st) 171765, ¶ 26.

¶ 35    In this case, Leach testified that he was familiar with the odor of cannabis, having smelled the substance hundreds of times. It is undisputed that Leach was trained in the detection of controlled substances. Leach testified that he detected a strong odor of burnt cannabis emanating from both the driver's side and the passenger's side of Montgomery's vehicle. Westart also testified that he detected a strong odor of raw cannabis, rather than burnt cannabis, emanating from the passenger's side of the vehicle. Relying on the holdings in *Smith* and *Weaver*, defendant argues on appeal that the smell of raw cannabis, as described by Westart, supports the search of a vehicle but does not create probable cause to search a passenger. See *Smith*, 2012 IL App (2d) 120307; *People v. Weaver*, 2013 IL App (3d) 130054.

¶ 36    Defendant's argument is unpersuasive. Neither the decision in *Smith* nor the decision in *Weaver* condemns the search of a passenger based solely on the smell of raw cannabis. In fact, neither case addresses passenger searches. However, these decisions are instructive regarding the difference between the odor of raw versus burnt cannabis. *Smith* and *Weaver* expressly hold that there is no functional difference between the odor of raw cannabis and the odor of burnt cannabis when it comes to probable cause for vehicle searches. See *Smith*, 2012 IL App (2d) 120307, ¶¶ 14-19; *Weaver*, 2013 IL App (3d) 130054, ¶¶ 28-32. In each case, the court held that the odor of cannabis in any form, strong or faint, gives rise to sufficient probable cause to search a vehicle where the officers are trained in the detection of cannabis. *Smith*, 2012 IL App (2d) 120307, ¶¶ 15-16, 19; *Weaver*, 2013 IL App (3d) 130054, ¶¶ 30-32.

¶ 37    As stated above, Illinois jurisprudence has logically extended the directives set forth in *Stout* when upholding the searches of passengers under circumstances very similar to those in the case at bar. After an exhaustive review of the case law, we conclude there is no distinction between the odor of raw versus burnt cannabis as the basis of probable cause supporting a lawful vehicle and passenger search.

¶ 38    Applying these principles to the undisputed facts present in this record, we note that two officers separately detected the odor of cannabis emanating from the passenger's side of Montgomery's vehicle where defendant sat. One officer testified that defendant made furtive movements before the officers reached the vehicle and appeared to be nervous and was fidgeting after the traffic stop. It appears from this record that the trial court found the officers' testimony about the odor and defendant's conduct to be credible.

¶ 39    The strong odor of cannabis emanating from the vehicle as detected by the trained officers, whether burnt or raw, coupled with the passenger's furtive movements, allowed the officers to particularize the cannabis odor to the passenger, this defendant, such that sufficient probable cause supported the decision to search defendant's person before the observation of a weapon.[1]

---

[1]We note that our supreme court's pending decision in *People v. Hill*, 2019 IL App (4th) 180041, *appeal allowed*, No. 124595 (Ill. May 22, 2019), will provide further instruction to Illinois courts regarding the permissibility of vehicle and passenger searches based on the odor of raw cannabis

¶ 40                                                  1. *Terry* Stop

¶ 41          Alternatively, even if officers had probable cause to search defendant's person once he was outside of the vehicle, defendant argues that the officers lacked probable cause to place him in handcuffs prior to any search of his person for contraband. Defendant argues that since Illinois permits qualified persons to conceal and carry a handgun, the officers were obligated to ask defendant about whether he had a permit to carry the handgun before restraining his hands with handcuffs. Defendant urges this court to determine, as a matter of law, that any evidence obtained while defendant was prematurely placed in handcuffs should have been suppressed. This alternative argument focuses on the precise timing of the placement of handcuffs on defendant's wrists. It is undisputed that defendant was not the subject of an arrest warrant at this time.

¶ 42          By way of a brief review of the record, defendant was not handcuffed before he stepped out of the vehicle or as he walked from the passenger side of the vehicle towards the back of the vehicle. Importantly, the observation of a handgun protruding from defendant's back pants pocket triggered the officers' decision to take control of defendant's hands. Once the handcuffs were in place, Westart immediately conducted a pat down of the exterior of defendant's clothing to check for weapons and contraband. Westart located and seized a handgun from defendant's back pocket and three small plastic bags of cocaine from defendant's front pocket.

¶ 43          Contrary to defendant's view, in some cases such as this, placing an individual in handcuffs does not transform a lawful *Terry* stop into an unlawful arrest for purposes of the suppression of evidence. *People v. Colyar*, 2013 IL 111835, ¶ 46. Further, where there is a legitimate concern, based on the circumstances, that the individual is armed and dangerous, a warrantless detention and search of defendant's outer clothing is permissible. See *id.*, ¶¶ 32-37; *Terry v. Ohio*, 392 U.S. 1 (1968). Handcuffing during a *Terry* stop is permitted where reasonable and necessary, and this determination depends on the totality of the circumstances of each individual case. *Colyar*, 2013 IL 111835, ¶¶ 46-47.

¶ 44          Here, the totality of the circumstances reveals that the location of the handgun made it easily accessible to defendant. Rather than drawing their handguns and instructing defendant to remain still, the officers adopted a less aggressive approach by applying handcuffs, making it momentarily difficult, if not impossible, for defendant to reach the handgun. Defendant's assertion that the officers should have had a conversation with defendant about whether he had a permit to carry a concealed weapon before the officers reacted to protect their own safety is unrealistic. *Colyar* makes it clear that officers are not required to first investigate whether defendant possessed the handgun legally before securing defendant and seizing the handgun. *Id.* ¶¶ 49-51. Such a requirement runs afoul with the principles of *Terry*, namely, officer safety. *Id.* ¶¶ 50-51. Even lawfully obtained and carried handguns are capable of ending an officer's life during a routine traffic stop such as this.

¶ 45          It is difficult to accept a theory that the officers in this case were not acting pursuant to a serious and legitimate concern that defendant was armed and dangerous. Therefore, we conclude that the use of handcuffs here was reasonable and necessary to ensure officer safety and did not serve to transform a valid *Terry* stop into an unlawful arrest. We agree that the trial

---

following our legislature's legalization of both medical and recreational cannabis. However, defendant's case, stemming from events occurring in 2015, will not fall under the *Hill* decision.

court properly denied defendant's motion to suppress evidence gathered after defendant was placed in handcuffs.

¶ 46    However, in the interest of conducting a complete analysis of the issues raised in this appeal, we turn to the State's contention that both the inevitable discovery and good faith exceptions also justify affirming the trial court's ruling.

¶ 47                    2. Inevitable Discovery and Good Faith Exceptions

¶ 48    The inevitable discovery exception provides that evidence otherwise inadmissible at trial may be admitted where the State can demonstrate that such evidence would inevitably have been discovered regardless of police error or misconduct. *People v. Sutherland*, 223 Ill. 2d 187, 227-28 (2006). Here, it is evident from the record that the officers intended to perform a lawful search of defendant's person at some point in time during the traffic stop based on the smell of cannabis. As discussed above, we have determined that the officers were entitled to do so before viewing the handgun. Thus, the contraband would have been discovered even if the officers had not noticed the handgun first and quickly reacted.

¶ 49    Further, under the good-faith exception, evidence will not be suppressed where officers had a reasonable, good-faith belief that their conduct was lawful, or where the officers' conduct involved simple, isolated negligence. *People v. LeFlore*, 2015 IL 116799, ¶ 24. Based on existing case law, these officers would have reasonably believed and were, in fact, entitled to remove the perceived threat to their safety by temporarily securing defendant and swiftly seizing the handgun. The good-faith exception to the warrant requirement applies to the facts of record.

¶ 50    In conclusion, we affirm the trial court's decision denying defendant's motion to suppress evidence on the grounds that the odor of cannabis justified the search of defendant's person based on existing case law in effect on the date of this traffic stop in 2015. We further hold that the decision to handcuff defendant did not transform this valid *Terry* stop into an arrest, and even it if did, both the inevitable discovery exception and the good-faith exception to the exclusionary rule apply here.

¶ 51                            B. Ineffective Assistance of Counsel

¶ 52    Next, defendant argues that he received ineffective assistance of counsel, since neither of the two attorneys that represented him in the trial court pursued a valid strategy to suppress the evidence in question. Defendant contends that if his trial attorneys had made the suppression arguments that appellate counsel now raises on appeal, the trial court would have granted defendant's motion to suppress.

¶ 53    To demonstrate ineffective assistance of counsel, a defendant must show (1) that counsel's performance was deficient in that it fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *People v. Manning*, 241 Ill. 2d 319, 326 (2011); *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). We review defendant's claim of ineffective assistance of counsel *de novo*. *People v. Lofton*, 2015 IL App (2d) 130135, ¶ 24; *People v. Wilson*, 392 Ill. App. 3d 189, 197 (2009).

¶ 54    As stated above, the arguments advanced by appellate counsel do not alter the propriety of the trial court's decision to deny defendant's motion to suppress. Defendant fails to establish

ineffective assistance of counsel here because defendant's suppression arguments on appeal lack merit. Accordingly, defendant suffered no prejudice, as any supplemental arguments by defendant's attorneys in the trial court would have been futile.

¶ 55                    C. Defendant's Stipulated Bench Trial and Rule 402(a) Compliance

¶ 56      Defendant next contends that his stipulated bench trial included a stipulation to the sufficiency of the State's evidence, therefore rendering defendant's stipulated bench trial tantamount to a guilty plea and requiring the trial court's compliance with Illinois Supreme Court Rule 402(a) (eff. July 1, 2012). Since the trial court arguably did not comply with and admonish defendant pursuant to Rule 402(a), defendant argues his convictions should be vacated.

¶ 57      In response, the State argues that defendant's stipulated bench trial was *not* tantamount to a guilty plea and discussions between the court and counsel prior to a lunch break should be disregarded by this court. Alternatively, the State argues the trial court substantially complied with Rule 402(a) and the convictions should be affirmed.

¶ 58      Based on the parties' arguments, we are tasked with first deciding (1) whether the proceedings were tantamount to a guilty plea and, (2) if so, whether the trial court substantially complied with Rule 402(a). Defendant concedes he failed to preserve this alleged error for appeal and requests this court to review defendant's claim under the second prong of plain error. We review unpreserved errors only where the evidence is closely balanced, or where the error is so serious as to affect the fairness of defendant's trial and challenge the integrity of the judicial process. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). However, the first step in addressing any plain error contention is to determine whether error occurred at all. *People v. Bannister*, 232 Ill. 2d 52, 65 (2008).

¶ 59      A stipulated bench trial is considered tantamount to a guilty plea where (1) the State presents its entire case by stipulation and the defendant fails to preserve a defense or (2) the defendant concedes, by way of stipulation, that the evidence is sufficient to support a guilty verdict. *People v. Clendenin*, 238 Ill. 2d 302, 319 (2010). Whether defendant's stipulated bench trial was tantamount to a guilty plea is a question of law subject to *de novo* review. *Weaver*, 2013 IL App (3d) 130054, ¶ 17.

¶ 60      Here, defense counsel stipulated to the evidence presented in defendant's case, including the suppression hearings, as well as Montgomery's case, Peoria County case No. 15-CF-406.[2] Defense counsel stipulated to the chain of possession of the handgun discovered on defendant's person, that the substance discovered in defendant's pocket tested positive for the presence of cocaine, and that defendant did not have a FOID card. Most importantly, defense counsel stipulated that the evidence was sufficient to support a finding of defendant's guilt just before an agreed lunch break.

¶ 61      The State contends that this court should ignore defense counsel's stipulation to the sufficiency of the evidence that appears in this record before the parties adjourned for a lunch recess. The State likens the facts of the instant case to those in *People v. Horton*, 143 Ill. 2d 11, 21 (1991), where our supreme court determined that statements made during closing argument are not considered evidence and that "when counsel conceded the sufficiency of the

_____

[2]The record reveals that the same trial judge presided over both defendant's and Montgomery's cases.

- 11 -

evidence to convict, [the] defendant was not, in effect, entering a guilty plea." *Id.* We reject the State's logic.

¶ 62       It is this court's opinion that the transcripts, when read as a whole, reveal that both the parties and the court, both before and after lunch, intended for defendant's bench trial to be tantamount to a guilty plea. For example, the parties engaged in significant discussion prior to lunch where it became understood that defendant would be stipulating to the sufficiency of the evidence. This conclusion is further evidenced by the parties' statements, together with the court's suggestion that a lunch break would be in order due to the lengthy admonishments that would follow once the details of the stipulation were recited into the record. Thus, we next consider defendant's argument that the trial court failed to substantially comply with Rule 402(a), requiring vacatur of his convictions.

¶ 63       We begin by reviewing the language of Rule 402(a). Rule 402(a) provides:

> "(a) Admonitions to Defendant. The court shall not accept a plea of guilty or a stipulation that the evidence is sufficient to convict without first, by addressing the defendant personally in open court, informing him or her of and determining that he or she understands the following:
>
> (1) the nature of the charge;
>
> (2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences;
>
> (3) that the defendant has the right to plead not guilty, or to persist in that plea if it has already been made, or to plead guilty; and
>
> (4) that if he or she pleads guilty there will not be a trial of any kind, so that by pleading guilty he or she waives the right to a trial by jury and the right to be confronted with the witnesses against him or her; or that by stipulating the evidence is sufficient to convict, he or she waives the right to a trial by jury and the right to be confronted with any witnesses against him or her who have not testified." Ill. S. Ct. R. 402(a) (eff. July 1, 2012).

¶ 64       This court has held that the purpose of Rule 402 admonishments is to ensure that the defendant understands the stipulation, the rights he is waiving by stipulating to the sufficiency of the evidence, and the consequences of this action. *People v. Campbell*, 2015 IL App (3d) 130614, ¶ 16; *People v. Dougherty*, 394 Ill. App. 3d 134, 138 (2009). However, only substantial compliance with Rule 402(a) is necessary to ensure a defendant's understanding and is satisfied when the record affirmatively establishes that defendant understood the admonishments. *Campbell*, 2015 IL App (3d) 130614, ¶ 16; *Dougherty*, 394 Ill. App. 3d at 138.

¶ 65       Defendant contends that the trial court failed to substantially comply with Rule 402(a) by (1) failing to inform defendant that he had the right to persist in a plea of not guilty, (2) failing to inform defendant that he had the right to a jury trial, and (3) failing to ensure that defendant knew the minimum sentence he faced. Regarding defendant's first contention, *Weaver* holds that while a stipulated bench trial of this nature is similar to a guilty plea, the fact remains that the defendant is not pleading guilty. *Weaver*, 2013 IL App (3d) 130054, ¶¶ 23, 25. Thus, admonishments about the right to plead not guilty are irrelevant. Clearly, this defendant understood that he had the right to plead not guilty because he was, in fact, pleading not guilty.

Ultimately, the trial court's failure to admonish defendant on this right did not degrade defendant's understanding of the proceeding.

¶ 66 We are similarly unpersuaded that the trial court failed to substantially comply with Rule 402(a) by not admonishing defendant on his right to a jury trial. The record reflects that during admonishments the trial court stated, "You have a right to have—well, you have waived your right to a jury trial." Based on this comment by the court, we note that defendant executed a written waiver of his right to a jury trial on the preceding day. This jury waiver was executed in open court, and defendant has not challenged the sufficiency of the admonishments he received before doing so.

¶ 67 On appeal, defendant concedes that he waived his right to a jury trial one day before his stipulated bench trial but argues that, under *Campbell*, his prior jury waiver could not substitute for a valid waiver the day defendant pled guilty. See *Campbell*, 2015 IL App (3d) 130614. The facts in *Campbell* are clearly distinguishable from those of the instant case. In *Campbell*, the defendant signed a jury waiver, pled guilty, signed a written guilty plea, and was admonished in compliance with Rule 402(a). *Id.* ¶¶ 4-5. The defendant subsequently withdrew his guilty plea, thereby withdrawing his prior jury waiver. *Id.* ¶¶ 8, 18. Then, the trial court in *Campbell* conducted a stipulated bench trial without admonishing the defendant about the defendant's right to a jury trial or obtaining a new jury waiver. *Id.* ¶¶ 9, 21. Unlike the defendant in *Campbell*, defendant's jury waiver remained in effect at the time of the stipulated bench trial. Thus, defendant was properly admonished on his right to proceed with a jury trial.

¶ 68 Lastly, defendant contends that the trial court failed to ensure defendant knew the minimum sentence he faced. Again, the record reveals the trial court correctly admonished defendant on the minimum sentence defendant faced on several occasions, both prior to the date of the stipulated bench trial and during the stipulated bench trial.

¶ 69 During defendant's initial bond hearing, the trial court asked defendant if he understood that the minimum sentence for the charge of armed violence against defendant was 15 years. Defendant responded that he understood. At defendant's arraignment, defendant waived a reading of the charges and penalties against him. During defendant's stipulated bench trial, the State remarked that the minimum term for armed violence was 15 years. Then, the trial court advised defendant that he "could receive a sentence range of 15 to 30 years," which was a "mandatory prison sentence." Based on this record, we conclude that the trial court adequately admonished defendant concerning the minimum penalty he faced both during the stipulated bench trial and on several prior occasions in open court.

¶ 70 For these reasons, we hold that the trial court substantially complied with the requirements of Rule 402(a). Hence, defendant fails to establish there is any judicial error surrounding the stipulated bench trial, and without error, plain error does not exist. Therefore, we honor defendant's procedural default of this issue.

¶ 71 D. As-Applied Constitutional Challenge

¶ 72 Defendant next argues that the sentencing provision of the armed violence statute (720 ILCS 5/33A-3(a) (West 2014)), mandating a minimum imprisonment term of 15 years, violates both article I, section 11, of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) and the eighth amendment of the United States Constitution (U.S. Const., amend. VIII) as applied to

defendant because the sentencing provision precluded the trial court from considering defendant's youth when determining the appropriate sentence.[3]

¶ 73　　Our supreme court in *Bingham* instructs that as-applied constitutional challenges, such as the challenge defendant advances in this appeal, are dependent on the specific history and circumstances of the person raising the as-applied challenge. *People v. Bingham*, 2018 IL 122008, ¶ 22; see also *People v. Harris*, 2018 IL 121932, ¶ 39. An as-applied challenge is not properly brought where there has been no evidentiary hearing and no findings of fact. *Bingham*, 2018 IL 122008, ¶ 22; *People v. Rizzo*, 2016 IL 118599, ¶ 26.

¶ 74　　Here, the record contains defendant's presentence investigation report. However, the record is devoid of an evidentiary hearing or findings of fact concerning, for example, the developmental state of this defendant's brain that would allow our court to review defendant's challenge. Thus, we decline to review defendant's challenge, as the record on this topic is not sufficiently developed for appellate review.

¶ 75　　　　　　　　　　　E. Truth-In-Sentencing and Day-for-Day Credit

¶ 76　　Lastly, the record contains the trial court's sentencing order requiring defendant to serve a 15-year term of imprisonment at 85% of the term imposed. Defendant argues on appeal that the trial court erred in doling out this sentence because defendant was eligible for day-for-day credit. Defendant concedes he failed to preserve this issue for appeal and requests this court review his claim under the doctrine of plain error. We conclude the error here rises to the level of second-prong plain error because it affected defendant's fundamental right to liberty. *People v. Loggins*, 2019 IL App (1st) 160482, ¶ 127.

¶ 77　　We note that the State does not take issue with defendant's view that day-for-day sentencing credit applies because there was no finding of great bodily harm by the trial court. See 730 ILCS 5/3-6-3(a)(2)(iii), (a)(2.1) (West 2014). It is undisputed that no harm to any person occurred in this case. Moreover, the trial court was concerned about the harshness of the punishment it was mandated to impose and would have imposed a shorter sentence if permitted by the statutory language.

¶ 78　　It is clear that defendant is eligible to receive day-for-day credit based on the statutory language set forth in sections 3-6-3(a)(2)(iii) and 3-6-3(a)(2.1) of the Unified Code of Corrections (Code). Section 3-6-3(a)(2)(iii) of the Code provides:

　　　　"that a prisoner serving a sentence for *** armed violence *** when the court has made and entered a finding *** that the conduct leading to conviction for the enumerated offense resulted in great bodily harm to a victim, shall receive no more than 4.5 days of sentence credit for each month of his or her sentence of imprisonment." *Id.* § 3-6-3(a)(2)(iii).

Section 3-6-3(a)(2.1) of the Code provides:

　　　　"For all offenses, other than those enumerated in subdivision (a)(2)(i), (ii), or (iii) ***, the rules and regulations shall provide that a prisoner who is serving a term of imprisonment shall receive one day of sentence credit for each day of his or her sentence of imprisonment." *Id.* § 3-6-3(a)(2.1).

---

[3]Defendant concedes that the case law regarding the culpability of youthful offenders focuses on punishments involving the death penalty, life sentences, and *de facto* life sentences.

Based on the above language, we agree that without a finding of great bodily harm, this defendant would be eligible for release after serving 50% of his sentence, provided he qualifies for this credit based on his conduct during incarceration. See *People v. Harris*, 2012 IL App (1st) 092251, ¶ 22; *Loggins*, 2019 IL App (1st) 160482, ¶¶ 124-28. The trial court's misapplication of the law is directly attributable to a mutual mistake in the information provided to the court by both the prosecution and defense counsel during the sentencing phase of this case.

¶ 79 We affirm defendant's convictions and reverse the trial court's order requiring defendant to serve his sentence at 85%, rather than 50%. Pursuant to the authority provided by Illinois Supreme Court Rule 615(b) (eff. Jan. 1, 1967), we are able to modify defendant's sentencing order to reflect that defendant be eligible for release after serving 50% of his sentence, rather than the 85% ordered by the trial court. However, based on the trial court's apparent angst regarding the length of defendant's sentence, we remand the matter for the trial court to modify defendant's sentencing order and then provide the circuit clerk with directions to issue a modified mittimus and submit the modified mittimus to the Illinois Department of Corrections to ensure defendant's timely release.

¶ 80                                   III. CONCLUSION

¶ 81 The judgment of the circuit court of Peoria County is affirmed in part, reversed in part, and remanded with directions.

¶ 82 Affirmed in part and reversed in part.

¶ 83 Cause remanded with directions.